### HIGHLAND OIL CORPORATION *v.* CITY OF LATHRUP VILLAGE.

1. MUNICIPAL CORPORATIONS—GASOLINE STATION—NUISANCE—BUILDING RESTRICTIONS.

Defendant city's contentions that plaintiff's proposed gasoline station would constitute a nuisance and a violation of building code in a subdivision restricted to residences except for certain lots on heavily-traveled thoroughfares, which exception included plaintiff's lots, *held*, without merit, under facts presented.

2. SAME—ORDINANCE—USE OF LOTS—RESIDENCES—PROFESSIONAL BUILDINGS.

An ordinance which limits the use of a single 20-foot lot to residential or professional building purposes would be unreasonable but where a tract is of sufficient size to enable an owner to comply with a reasonable building ordinance, it would not be invalid as applied to such tract merely because the land may have been divided into lots each too small to accommodate the buildings permitted.

REFERENCES FOR POINTS IN HEADNOTES

[2] 58 Am Jur, Zoning §§ 21, 22, 141.
[4] 58 Am Jur, Zoning § 16.
[6] 35 Am Jur, Mandamus § 393.

3. SAME—ZONING ORDINANCE—TRANSITIONAL PROFESSIONAL CLASSI-
FICATION.

> Transitional professional classification in home-rule city's zoning
> ordinance as applied to plaintiff's block of seven 20-foot lots
> *held,* not confiscatory, under evidence presented.

4. SAME—ZONING ORDINANCE—PRESUMPTIONS—BURDEN OF PROVING
INVALIDITY.

> A city's zoning ordinance is presumptively valid and the burden
> is upon party attacking it to show that it is unreasonable or
> confiscatory or that it has no reasonable relationship to public
> health, safety or morals or the general welfare.

5. SAME—ZONING BOARD OF APPEALS—EXCEPTION TO ORDINANCE—DE-
LAY IN DENIAL OF BUILDING PERMIT.

> Home-rule city's zoning ordinance which provided for relief by
> the zoning board of appeals by way of appeal or application
> for exception would not be held invalid, where applicant for
> building permit for erection of gasoline filling station had not
> appealed from denial and would be entitled on such an appeal
> to consideration of various conditions in order to accord to
> and fit in with the residential character of the neighborhood
> surrounding it, where there had been a delay in passing upon
> the permit, applied for before adoption of ordinance making
> plaintiff's proposed use a nonconforming use; but denied after
> such ordinance was adopted.

6. COSTS—DISCRETION OF COURT.

> No costs are allowed in mandamus proceeding to compel home-
> rule city to issue a building permit for construction of gasoline
> station, where record is such as to permit such discretionary
> disallowance.

Appeal from Oakland; Doty (Frank L.), J.   Sub-
mitted January 8, 1957.   (Calendar No. 46,742.)
Decided October 7, 1957.

Mandamus by Highland Oil Corporation, a Mich-
igan corporation, against the City of Lathrup Vil-
lage, a municipal corporation, and certain of its
officials, to compel issuance of building permit for
gasoline station.  From order granting writ. defend-
ants appeal.  Reversed and writ dismissed.

*Glenn C. Gillespie* and *James G. Hartrick,* for plaintiff.

*Everett F. Hayes* (*Arthur E. Moore,* of counsel), for defendants.

EDWARDS, J. This case in its most important aspect involves an attack upon the constitutionality of the zoning ordinance in the new city of Lathrup Village in Oakland county. The ordinance under fire first restricted certain lots along Southfield road to a residential classification and then by amendment permitted professional buildings (in the nature of doctors' offices) to be built there.

The plaintiff oil company claims a constitutional right to build a gasoline station on its lots. It points to long-time business restrictions and 20 x 100-foot platting of its 7 lots, along with heavy traffic on Southfield road as rendering the restrictive zoning unreasonable. Lathrup Village, as defendant, points to an immediate neighborhood of fine homes, the long-time (if by chance interrupted) residential zoning of the particular lots, and the claimed detrimental effect of a gasoline station on nearby, though not adjacent, homes.

The history of Lathrup Village is laid out in this record. It dates back to 1924 when the 9 subdivisions now comprising the new city were originally acquired, carefully planned and platted by Louise Lathrup Kelley and her mother. After many vicissitudes through depression and war (see *Craig* v. *Kelley,* 311 Mich 167), the subdivisions developed over the years until they were incorporated in a home-rule city by charter adopted in 1953. As we deal with one of its problems now, the city of Lathrup Village is a small residential community of about 1,000 homes, most of them valued between $25,000 and $50,000 and located midway between the

northern Detroit city limits and the city of Birmingham. The streets of Lathrup Village are winding and shaded. There are only a few commercial buildings in the entire city. There is no manufacturing, and as of now there are no gasoline stations.

The original plan of Lathrup Village included provision for a considerable amount of commercial frontage. In addition to the platting of 20-foot lots along Eleven and Twelve Mile roads, all of the Southfield road frontage within what is now the village was laid out in 20 x 100-foot lots with an alley to the rear, and with restrictions which permitted business usage. The record seems to indicate that at least for many years the lots thus platted for business proved to number far in excess of demand.

In 1937 the township of Southfield first adopted a zoning ordinance which was applicable to the Lathrup subdivisions, and it is undisputed that that ordinance zoned the property currently in dispute as residential. Such zoning continued at least until the adoption of the charter of the new city in 1953. Section 3.16 of that charter continued its effectiveness as follows:

"The zoning ordinance and the building code of the township of Southfield, under the conditions of section 7.1 hereof, shall continue in full force and effect in the territory incorporated within the city and be administered therein by the city until amended or repealed or found invalid."

Section 7.1 of the charter thus referred to concerns interim legislation. Section 18.11 of the charter is entitled "Interim Legislation," and reads as follows:

"Within 30 days after the effective date hereof, the clerk under direction of the council, shall procure, and enter and maintain in a record called 'Interim Legislation,' a copy of each existing township

bylaw, ordinance, resolution, rule and regulation disclosed by the public records of the township; and the council shall, within 60 days after such entry, determine the provisions thereof which apply to said territory under authority of this section. The application of such provisions to this home-rule city shall terminate not later than June 7, 1954."

The new city council did not meet the time schedule contemplated by this last provision and no zoning ordinance had been adopted by the new city as of the fall of 1954. At that time plaintiff Highland Oil was seeking for gasoline station locations and through a real-estate broker entered negotiations with Louise Lathrup Kelley, the original developer of the city who held title to the 7 lots running north from the northeast corner of Southfield and Glenwood. Obviously relying upon the June 7, 1954, termination date, Mrs. Kelley represented to Highland Oil's representative that this property was available for construction of a gasoline station since no zoning ordinance was in effect. The record discloses that at the time Mrs. Kelley's husband was a member of a city board charged with drafting the new zoning ordinance.

After checking the charter provisions and satisfying itself, Highland Oil bought the 7 lots for $31,000. Mrs. Kelley retained the right to approve or disapprove the plans for the proposed gasoline station, her interest therein amongst others being ownership of most of the adjacent property. The subsequent developments of consequence to our case took place in the following chronology:

April 5, 1955, Highland Oil filed an application for a building permit for a gasoline station on the property it had purchased, with the duly designated building inspector of the new city.

April 8, 1955, this application was referred to the city council with a letter informing the council that

the application for this "high-grade" gasoline station did not conform to "the proposed zoning ordinance."

April 11, 1955, Highland Oil's representative appeared before the city council and requested issuance of the building permit, but the council instead adopted a resolution referring the application to its zoning committee for recommendation.

On April 15th, Highland Oil filed the presently-considered petition for writ of mandamus to compel the issuance of building permit. This writ was finally granted by the circuit judge after an extended hearing, by an order signed October 26, 1955. But long before that a number of other developments had intervened.

April 22, 1955, a week after the petition for the writ had been filed, the city council adopted ordinance 18 which zoned the property in dispute for residential purposes only and established such front, rear and side yard restrictions as to have the effect of forbidding the use of any 20-foot lot for any purpose unless 4 of them were accumulated in 1 ownership, or unless there was an exception granted by the board of zoning appeals.

May 5, 1955, the city council passed a resolution acting upon the building permit application for the first time and denying it, citing the newly-adopted zoning ordinance and certain building code deviations which apparently were mentioned at this point for the first time.

July 12, 1955, the city council adopted ordinance 22 which provided in 4 blocks of Southfield frontage, including the property currently discussed, for the establishment of a TP–1 district,* as follows:

"In the TP–1 district, no building structure or premises, except as otherwise provided in this ordi-

---

* Transition professional district.—REPORTER.

nance, shall be erected or used except for 1 of the following uses:

"(a) Any use permitted in single dwelling district R–1, but limited to buildings 1 story in height.

"(b) Professional offices such as for doctors, lawyers, dentists, architects, engineers or similar professions."

This ordinance likewise provided that no building should be erected on any lots having a frontage less than 50 feet and likewise provided that no building should be built without prior approval of the building inspector as to conformity of the architectural plan to the construction of the adjacent residential neighborhood, with appeal to the zoning board of appeals from his decision. The effect of this ordinance is portrayed visually below in plaintiff's exhibit 9:

The trial judge took testimony on this matter at some length. Surprisingly, the plaintiff's witnesses testified that the highest and best use of the lands was for commercial purposes, and that the construction of a gasoline station in this location conformed to the needs of the community and sound city planning. Strangely enough, defendants' witnesses testified that the highest and best use of the land was a TP-1 use for professional offices, and that a gasoline station due to its architecture, lights and noise would prove a detriment to the immediately surrounding neighborhood.

The trial judge, after reciting the facts, brushed aside as essentially fabricated defendants' contentions concerning building code violation. We agree. He likewise brushed aside defendants' contention that the oil station contemplated would constitute a nuisance, relying on *Sandenburgh* v. *Michigamme Oil Co.*, 249 Mich 372. Again, we agree. See *Adams* v. *Kalamazoo Ice & Fuel Co.*, 245 Mich 261 (ice station) ; *Sommers* v. *City of Detroit*, 284 Mich 67 (incinerator for disposing of garbage, citing *Sandenburgh*) ; *Moore* v. *Johnson*, 245 Mich 173 (commercial garage) ; *Lansing* v. *Perry*, 216 Mich 23 (auto sales and service).

Thereafter the trial judge noted that under ordinance 18 no owner of less than four 20-foot lots could build a residence, and under ordinance 22 no owner of less than 3 could build a professional office. His opinion continues:

"There is ample authority in prior decisions of the Supreme Court, that an ordinance which limits the use of a lot for residential purposes having a width of only 20 feet is unreasonable. *Hering* v. *City of Royal Oak*, 326 Mich 232 ; *Ritenour* v. *Township of Dearborn*, 326 Mich 242 ; *Robyns* v. *City of Dearborn*, 341 Mich 495. * * * Under the authority of these cases, it must be held that ordinance

No 18, as applied to plaintiff's property, bears no relation to public health, welfare or safety and cannot be sustained.

"What has already been said applies with equal force to ordinance No 22."

It is only fair to note that this opinion was decided in October of 1955 and that the latest, factually closest and we think controlling opinion of this Court—*Korby* v. *Township of Redford,* 348 Mich 193—dealing with the relationship of zoning and previously-platted 20-foot business lots, was decided April 22, 1957. We will not repeat what we believe to be the sound reasoning of this case beyond the following quote (p 198):

"We do not think the case* is authority for the proposition that plaintiffs' property, extensive enough in width to accommodate several residences built in conformity with the ordinance, may escape the classification and restrictions imposed by the ordinance on the ground of unreasonableness merely because the property happens to have been platted with lines at 20-foot intervals for lot boundaries. That is not a fact or circumstance which affects or detracts from the reasonableness of the classification. If it were held to be so, the result would be that it would be competent for landowners to perpetually defeat future zoning restrictions by criss-crossing their lands on a plat map with lines ostensibly dividing the same into parcels so small that each would be unsuited to any foreseeable use unless combined with others. The test of reasonableness may not be distorted or thwarted by any such artificial device."

Plaintiff here owns, not 1, but 7 lots. As compared with *Korby, supra,* the record here shows an even longer and more continuous effort at restriction, and that the impact of completely uncontrolled

---

\* *Ritenour* v. *Township of Dearborn, supra.*—REPORTER.

business development upon the adjacent residential neighborhood might be even more severe. The transitional professional classification applied to plaintiff's 140 feet of frontage is plainly not confiscatory. One of defendants' witnesses testified:

"*Q*. Are you familiar with the fair cash market value of the property in question so you can give us your opinion in that regard?

"*A*. I gave an opinion of $120 per foot, or $17,500 for the subject property—$17,750, rather."

While there may be differences of opinion in this Court, as perhaps in Lathrup Village, over the wisdom of as strict restriction as this, it is not our Court's function to pass on the wisdom of legislation. These ordinances are presumptively valid, and the burden is on the plaintiff to prove that it is unreasonable or confiscatory or that it has no reasonable relationship to public health, safety, morals or the general welfare. *Korby* v. *Township of Redford, supra; Austin* v. *Older,* 283 Mich 667; *Northwood Properties Company* v. *Royal Oak City Inspector,* 325 Mich 419.

While this disposes of the constitutional question presented to us, and calls for a dismissal of the writ of mandamus issued by the circuit judge, there are other facts of some importance in this record which do not bear directly upon the constitutionality of the zoning ordinance.

We believe from our reading of the charter of the new city of Lathrup Village that in point of fact when plaintiff applied for its building permit there was no zoning ordinance in effect, the previous township zoning ordinance in its application to the new city having expired on June 7, 1954. At that point, in the absence of any valid objection, plaintiff was entitled to the building permit it sought. As noted,

we consider the late thought-up building code deficiencies a contrivance.

The legal effect of the city's delay in issuing said permit is not before us on appeal, since plaintiff's brief states:

"At the trial, although both zoning ordinances had been adopted by the city after plaintiff's petition for mandamus was filed, plaintiff's counsel waived any objections to the legal effect of such procedure."

But we note that at the time of plaintiff's purchase of the land in question, the contemplated use was legally permissible.

In defendants' reply brief, emphasis is placed upon a point previously urged by the city, namely, that plaintiff here had not exhausted its remedy under the city zoning ordinance by appeal or application for exception to the zoning board of appeals. Defendants suggest, "The case of *Faucher* v. *Grosse Ile Township Building Inspector,* 321 Mich 193, points out that a zoning ordinance may be unreasonable with respect to the manner in which it is enforced." And defendants continue, "This case emphasizes the necessity for the plaintiff in the city of Lathrup Village case to have requested relief from the board of appeals."

One of the exhibits in the instant proceeding sets forth the conditions which plaintiff apparently willingly accepted at the behest of Mrs. Kelley to accord to and fit in with the residential character of the neighborhood:

"A—All exterior walls, except doors and windows, shall be of red Roman brick (with cut stone coping where coping is shown); office floor in Kentile.

"B—There shall be a chimney with flue adequate for built-in commercial incinerator which will be built in, with door opening only to the interior of the building.

"C—There shall be installed a sewage reduction unit (septic tank) of at least 800 cubic feet, connected to sewer.

"D—Surface and roof water shall not be put into the sanitary sewers.

"E—This is intended primarily as a community service station.

"F—There shall be installed and maintained by the owner a fencing and green-belt screening on the eastern and northern side of the site; and a lattice screen of any toilet exterior door.

"G—All illumination of site shall not be diffused neighborhood lighting, but directed to the operation of the station, only while station is in operation.

"H—The station site and ground shall not be used for any customary outdoor display or merchandise or cars-for-sale or the customary allnight parking of any trucks or automobiles.

"I—There shall not be maintained outdoors on the site or adjacent alley, any garbage or refuse cans or containers, storage boxes, refuse or litter."

While defendants' suggestion was no doubt principally aimed at sustaining its ordinance, we have no doubt that the suggestion was made in good faith, also, and that on any such application by plaintiff (under section 9.4[f] and [g] of ordinance 18), proper consideration would be given to the factors favoring exception noted above.

For the reasons previously noted, we hold that the ordinances under attack are not unreasonable or unconstitutional. An order may be entered dismissing the writ of mandamus previously issued by the circuit judge. On this record, in the discretion of the Court, no costs are awarded.

DETHMERS, C. J., and SHARPE, SMITH, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.