SCHOLNICK v. CITY OF BLOOMFIELD HILLS.

1. APPEAL AND ERROR—ZONING—MASTER PLAN.
   Claim on appeal that trial court committed error in suit to enjoin enforcement of zoning ordinance which upgraded plaintiffs' property from multiple-dwelling to single-residence use when court permitted unrecorded master plan to be introduced came too late, where plaintiffs' attorney stated he had no objection to its admission when it was presented for such purpose (CL 1948, § 125.38).

2. MUNICIPAL CORPORATIONS—ZONING—PROPOSED PLAT AS EVIDENCE.
   It was not reversible error to admit proposed plat of plaintiffs' 30.2-acre tract in evidence in suit to enjoin enforcement of

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 246 *et seq.*
[3] 58 Am Jur, Witnesses § 775 *et seq.*
[5] 58 Am Jur, Witnesses § 676.
[6] 58 Am Jur, Witnesses § 783 *et seq.*
[7] 58 Am Jur, Zoning §§ 14, 18.
[7, 8, 11] 58 Am Jur, Zoning § 21.
[9, 10] 58 Am Jur, Zoning § 16.

zoning ordinance upgrading the property from multiple-dwelling use to single-residence use in order to show that the property was practically and economically useful for the zoned purpose.

3. WITNESSES—IMPEACHMENT—FOUNDATION.
A foundation for the introduction of former testimony of a witness for use as impeachment testimony must first be laid by asking the witness as to whether or not he made certain statements in connection with a designated matter and giving him a chance to admit, deny or explain the proposed contradiction.

4. SAME—IMPEACHMENT—PRACTICE IN CHANCERY.
The practice upon impeachment of a witness is the same in chancery as at law.

5. EQUITY — CROSS-EXAMINATION — IMPEACHMENT — DISCRETION OF COURT.
The extent to which cross-examination for impeachment purposes in an equity suit may be indulged in is a matter that should be left to the sound discretion of the trial judge.

6. SAME — CROSS-EXAMINATION — IMPEACHMENT — MATERIALITY OF TESTIMONY.
It was not error to exclude former testimony for purpose of impeaching an expert appraisal witness on cross-examination, where there was no prior showing of the materiality of such testimony to issues involved in suit to enjoin enforcement of zoning ordinance.

7. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—POLICE POWER.
Zoning ordinances are a valid exercise of the police power when their provisions are reasonable.

8. SAME—ZONING ORDINANCES—REASONABLENESS.
The reasonableness of a zoning ordinance is the test of its legality.

9. SAME—ZONING ORDINANCES—PRESUMPTION OF VALIDITY.
A zoning ordinance is presumed to be valid.

10. SAME—ZONING ORDINANCES—BURDEN OF PROOF OF INVALIDITY.
The burden of proof of invalidity of a zoning ordinance is upon the party attacking it.

11. SAME—ZONING ORDINANCES—RESIDENCES.
A zoning ordinance is invalid, if it zones land for residence purposes that is unfit for such use.

12. SAME—ZONING ORDINANCE—RESIDENCE—VALUE.
  Zoning ordinance upgrading 30.2-acre tract at intersection of
    extremely heavily-travelled highway and a crossroad from
    multiple-dwelling to single-residence use in a city predominantly
    devoted to very high class residences *held*, not unreasonable,
    in view of trial court's finding, supported by testimony, that
    the property could be subdivided into a small number of
    larger home sites, although its value for commercial uses is
    greater.

Appeal from Oakland; Doty (Frank L.), J. Submitted October 9, 1957. (Docket No. 24, Calendar No. 47,175.) Decided November 26, 1957.

Bill by Morton L. Scholnick and others against the City of Bloomfield Hills, a municipal corporation, and its city manager to enjoin enforcement of zoning ordinances as applicable to their property. Bill dismissed. Plaintiff appeals. Affirmed.

*Stanton G. Dondero (Fletcher L. Renton,* of counsel), for plaintiffs.

*Howlett, Hartman & Beier (William B. Hartman,* of counsel), for defendants.

SHARPE, J. This is a bill in chancery brought to enjoin the enforcement of zoning ordinance No 69 of the city of Bloomfield Hills. From a decree dismissing the bill, plaintiffs appeal. The essential facts have been stipulated and are, in part, as follows:

"That plaintiffs are the owners in fee simple of property described in their bill of complaint, located in the city of Bloomfield Hills, Oakland county, Michigan, described as follows:   *   *   *

"Said property comprises 30.2 acres and is located on the southwest corner of Woodward avenue and Hickory Grove road. The property has the shape of a trapezoid with the west boundary, approximate-

ly 1,350 feet in length, being perpendicular to the 2 parallel sides. Of these latter, that along the north boundary, Hickory Grove road, is approximately 550 feet in length, and the base forming the southern boundary is about 1,450 feet in length. The angling side, that along Woodward avenue, is approximately 1,600 feet long. Except for the immediate corner near the highway intersection, the property is generally wooded and has uneven contours; that the only buildings on the same are a small shanty residence and barn, both of which are in poor condition and in a state of general disrepair.  *  *  *

"That Hickory Grove road is the northerly city limits of the city of Bloomfield Hills.

"That Woodward avenue approximately bisects the city of Bloomfield Hills diagonally, running in a northwesterly and southeasterly direction; that Woodward avenue, through the city of Bloomfield Hills, is a Michigan State trunk highway 'and a United States trunk highway, known as US-10, and consisting of two 4-lane strips of highway, divided by a parkway; that said Woodward avenue has its beginning at the Detroit river and extends northwesterly through the cities of Detroit, Highland Park, Ferndale, Pleasant Ridge, Royal Oak, Huntington Woods, Berkley, Birmingham, and Bloomfield Hills to Pontiac and points north; that said Woodward avenue is the main thoroughfare emanating from Detroit connecting with Pontiac, Flint and Saginaw, and carries an extremely heavy volume of motor vehicular traffic. Through the city of Bloomfield Hills, however, it has the appearance and characteristics of a parkway rather than a superhighway due in part to plantings and landscaping, both in the center dividing area and along both sides of the street, and in part to the fact that most of the residences are situated on comparatively large lots set well back from the highway.

"No commercial structures or uses have been permitted along Woodward avenue within the city except at or near the center of the city. There are

no multiple dwellings in existence on Woodward
avenue north of the commercial area, but same are
permitted under the present zoning ordinance on
both sides of Woodward avenue in close proximity
to the commercial section. There is a multibuilding
multiple housing development in existence on the
east side of Woodward avenue south of the commer-
cial area, such use being permitted under the present
zoning ordinance. Both sides of Woodward avenue
have otherwise been developed for residential pur-
poses. Many of the homes along Woodward avenue
are large, situated on large tracts of ground, as are
most of the dwellings in the city, including a num-
ber recently built.

"A private children's school is in existence and is
permitted under the zoning ordinance on the easterly
side of Woodward avenue immediately across from
the southerly part of plaintiffs' property. The prop-
erty across from that of the plaintiffs to the north is
vacant.

"At the time of purchase of said property by the
plaintiffs, the then zoning ordinance of the city of
Bloomfield Hills (Ordinance No 64) permitted mul-
tiple dwellings on the Woodward avenue frontage to
a depth of 400 feet, and single-family residences on
the balance of said property on building sites not
less than 30,000 square feet; that the present zoning
ordinance, adopted on June 29, 1954 (Ordinance No
69), has upgraded this property to require single-
family residence use of all of plaintiffs' property
on building sites of not less than 2 acres, this being
the highest classification in the zoning ordinance.

"There is no public sewer system, nor any public
water system available in the city of Bloomfield Hills,
and the city has been ordered by decree pursuant to
the petition of the water resources board, to abate
pollution in the Rouge river which as a small stream,
flows about through the center of the plaintiffs' prop-
erty.   *   *   *

"The defendant city is a beautiful, rolling and
wooded exclusive residential area, one of the finest

in the country, within which are many well known institutions, such as the Cranbrook Foundation and Institutions, Christ Church, one of the outstanding pieces of church architecture in the United States, and St. Hugo of the Hills, a Catholic Church of substantial size and beauty."

A trial was held and the court filed an opinion, a part of which reads as follows:

"In 1956 the city issued 49 building permits for residences averaging 57,200 cubic feet in size, in 1955, 40 permits for residences averaging 49,250 cubic feet, and in 1954, 34 permits for residences averaging 46,800 cubic feet, and attached garages were not included.

"The land has a depth of from 550 feet on the north to 1,450 feet on the south and there is no commercial activity for nearly a mile in either direction. Immediately south of plaintiffs' property is a new subdivision containing lots priced at about $10,000 each. There are 2 large new homes being constructed on Woodward avenue south of the center. Within a 2,000-foot radius of the center of the property involved land use is 95.6% residential, 4.4% institutional and none commercial. Within the 3,000-foot circle some of the business property on Square Lake road is taken in, so that we have a .4% commercial, 5.6% institutional and 94% residential.

"According to a master plan of the city 8 valuable parcels of land consisting of 2-1/2 to 4-1/2 acres can be profitably used for residential purposes, these to be located 150 to 200 feet from Woodward avenue, with a buffer strip consisting of a road and trees along its front and at the east end, with 1 entrance of ingress and egress from and to Woodward avenue. * * *

"The witnesses differ as to the value of the property for residential and commercial purposes. The experts for the plaintiffs based its value at $50,000 for residential purposes and $90,000 to $100,000 for commercial. * * *

"The court is not unmindful of the traffic conditions on Woodward avenue, as many cases have been decided by our Supreme Court in which it has been said that because of the conditions existing thereon, the property bordering it is unsuitable for residential purposes. The land in question is a part of the city of Bloomfield Hills, one of the beauty spots of America. The master plan previously discussed, while not as yet adopted by the city, clearly indicates that the land in question can be used so as to continue and maintain the long-established building standards of the city. In reaching my conclusion, I have not considered as important esthetic tastes, but instead, the property rights and the general welfare of the community as a whole.

"In my opinion the ordinance is reasonable and valid. A decree may be entered accordingly."

Plaintiffs appeal and urge that the trial court was in error in receiving in evidence testimony relating to a proposed master plan, for the reason that such master plan was never certified to the register of deeds of Oakland county as required by CL 1948, § 125.38 (Stat Ann 1949 Rev § 5.2998). It appears that when the exhibit was offered in evidence plaintiffs' attorney stated that he had no objection to its admission in evidence. Under such circumstances it is now too late to claim error.

Plaintiffs also urge that it was error to receive in evidence exhibit C, which is a sketch of a proposed plat of plaintiffs' property. It appears that the purpose of the exhibit was to show to the court that the property was practically and economically useful for the zoned purpose. We find no reversible error in admitting exhibit C as evidence for the purpose stated.

It is also urged that the trial court was in error in refusing to take the testimony of one of defendants' witnesses concerning his testimony in another Bloomfield Hills-Woodward avenue case. It appears

that the witness, Richard Jeffery, upon cross-examination, testified:

"*Q*. Have you done any appraisal work along Woodward avenue in Bloomfield Hills?

"*A*. Yes, I have.

"*Q*. And how many parcels would you say?

"*A*. Well, I appraised the Birmingham parking lot in the southeasterly quadrangle that is just off Woodward avenue and I appraised Brae-Burn—

"*Q*. Is that in Bloomfield Hills?

"*A*. No, it is in Birmingham.

"*Q*. I am talking about Bloomfield Hills.

"*A*. I have appraised the reasonablness of zoning and the market value of the property known as Brae-Burn.

"*Q*. Brae-Burn?

"*A*. Yes, sir. I have appraised that.

"*Q*. Was that—at whose instigation did you appraise Brae-Burn?

"*A*. Judge Arthur Moore.

"*Q*. I see, and that was in connection with litigation in this circuit?

"*A*. I believe it was. It was zoning—the reasonableness of zoning.

"*Q*. Did you come into court and testify at that time?

"*A*. I did.

"*Q*. Would you care to tell us what your testimony was at that time?

"*A*. Well—

"*Mr. Hartman*: If the Court please, we are not trying that law suit.

"*Mr. Dondero*: I understand that, but if he was on that side of it, I think he could testify as to what he thinks is reasonable there. It is on Woodward avenue, your Honor.

"*The Court*: Objection sustained.

"*Mr. Dondero*: I believe that's all.

"*Mr. Hartman*: That's all, Mr. Jeffery."

Plaintiffs urge that they had a clear right on cross-examination of the witness to put any question to test the credibility of the witness. The rule as to the admission of testimony in another case is well stated in the following:

"For former testimony to be admissible by way of impeachment, a foundation for its introduction must first be laid. * * * The witness whose credibility is at stake must be asked as to whether he made a certain statement or statements, clearly indicating what they were, in connection with a designated matter, in such manner as to pin his attention to the proposed contradiction and give him a chance to admit, deny or explain it." (5 Callaghan, Michigan Pleading & Practice, § 37.211.)

"Time, place and person must be fixed by the impeaching question, the language which it is claimed the witness used must be given, and be asked if he used it. * * * The practice upon impeachment is the same in chancery as at law. * * * A deposition of a witness may be introduced to impeach him, though not previously read to him; but if he is to be cross-examined as to the deposition, it should first be read to him." (Potter, Michigan Evidence, p 528.)

In the case at bar the witness was asked to state his testimony given at a former trial without any prior showing of the materiality of such testimony. No specific questions were asked regarding his former testimony. The extent to which cross-examination may be indulged in is a matter that should be left to the sound discretion of the trial judge. We find no error in the court's ruling.

It is next urged that the trial court erred in finding that the zoning ordinance was reasonable as applied to all of plaintiffs' property, in that the trial court overlooked the claim that the property opposite to the property in question and east of Woodward avenue may now be used for multiple purposes;

that the daily vehicle average on Woodward avenue in the vicinity of the property in question is 38,000 vehicles; that with 1 or 2 exceptions there has been no recent residential development in that vicinity; that the zoning ordinance provides for 4 categories of single family residences, *i.e.*, 2-acre lots, 1–1/2 acre lots, 1-acre lots and 3/4-acre lots, and that the property has a greater commercial value than residential value.

It is an established principle of law that zoning ordinances, when reasonable in their provisions, are a valid exercise of the police power, see *Austin* v. *Older,* 283 Mich 667; that the reasonableness of a zoning ordinance is recognized as the test of its legality, see *Hitchman* v. *Oakland Township,* 329 Mich 331; and the presumption of validity attends zoning ordinances and the burden of proof is on the party challenging an ordinance to establish his claim, see *Northwood Properties Company* v. *Royal Oak City Inspector,* 325 Mich 419. It is also well established that if land zoned for residences is unfit for residences, then such a zoning ordinance is invalid, see *Fenner* v. *City of Muskegon,* 331 Mich 732.

In the case at bar the city of Bloomfield Hills has developed into a city of large single residences located on large lots and tracts, and has a comparatively small commercial area. The land is rolling, with hills and valleys. It has a stream running through portions of it. The hill tops and the higher portions have been, and are being, utilized for the building of well-designed ranch-type and multilevel single residences, most of which have attached garages. They have winding drives and much scenic beauty. These properties range from 35,000 cubic feet upwards. They are built on sites ranging largely from 1 acre to 4–1/2 acres in size.

Mr. Kephart, the city manager, testified that it is a city of larger homes, larger lots. It is a place for those people who want suburban living and are willing to pay for it. The people themselves, in several instances, have purchased 2 lots upon which to build a house and made the 2 lots 1 building site.

Mr. Kephart further testified that during the year 1956 to the time of trial there had been issued 49 permits for single-family residences, averaging in size 57,200 cubic feet; in 1955, 40 such permits, averaging 49,250 cubic feet; and in 1954, 34 such permits, averaging 46,800 cubic feet.

The property in question comprises approximately 30 acres. Mr. Jeffery, a witness called by defendants, testified:

"*Q.* Would you describe this general area to us, just generally?

"*A.* The general area to the west of Woodward avenue is being developed with high-class single residence—into a high-class single-residence district. The land is rolling, with hills and valleys. It has a stream running through portions of it. The hill tops and the higher portions have been and are being utilized for the building of well-designed ranch-type and multilevel single residences, most of which have attached garages. They have winding drives and much natural scenic beauty. These properties range from 35,000 cubic feet upwards. They are being built on sites ranging largely from 1 acre to 4-1/2 acres in size. This subject property has 30.2 acres, is rolling land with hills and with lower land, which we call valley land, and it has a stream running through a portion of it, draining it. It is quite heavily wooded, but it is high at the corner of Woodward and Hickory Grove road, the high land extending for a considerable distance along both of these roads. Woodward and Hickory Grove road. Towards the south it slopes gradually downward approximately 20 to 25 feet and at the south end of the

property it rises slightly again and running west of Woodward avenue this—the lower land continues low for quite a distance and then it rises again to an elevation above sea level of 900 to 924 feet above sea level. The low portions run around 875 feet above sea level, so that you have a rise ranging from 25 to 50 feet in the terrain of the land.  *  *  *

"*A.* Well, it is my opinion after considerable study that the highest and best use of the subject property —and both Mr. Beauchamp and I concur in this—is for sizeable residential sites in accordance with the present zoning, containing not less than 35,000 cubic feet of—  *  *  *

"*Q.* And, if the property were developed for the type of sites you refer to, would it be practical to subdivide this 30-acre parcel?

"*A.* Oh, yes, I think it would very definitely. I think it would lend itself to some very unusual sites."

The fact that plaintiffs' property fronts on Woodward avenue and to a certain depth is more favorably situated for commercial uses and has a greater value as commercial property, does not justify the rezoning of the property as commercial, especially when the property could be subdivided into a small number of larger home sites, thus making an attractive residential community.

We are in accord with the findings of the trial judge. The decree of the circuit court is affirmed, with costs.

DETHMERS, C. J., and SMITH, EDWARDS, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.