BOWMAN v. CITY OF SOUTHFIELD.

DECISION OF THE COURT.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCE—RESIDENCE USE AT INTERSECTION OF HEAVILY-TRAVELED ROADS—EQUALLY DIVIDED COURT.

Judgment for plaintiff in action to declare zoning ordinance unconstitutional as it affects her property at intersection of heavily-traveled roads by limiting it to residential uses, is affirmed by an equally divided court.

SEPARATE OPINION FOR REVERSAL.

DETHMERS, SOURIS, SMITH, and ADAMS, JJ.

2. MUNICIPAL CORPORATIONS—ZONING ORDINANCE.

*A court may not properly exercise the legislative function of determining the suitability, desirability, and need for a shopping center in the area, where the facts clearly preponderate in the direction of reasonableness of zoning ordinance which had been adopted by defendant city, and included plaintiff's property in a residential zone.*

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  58 Am Jur, Zoning §§ 14, 16, 33, 238; 5 Am Jur 2d, Appeal and Error § 902.
[2]  58 Am Jur, Zoning §§ 21–23, 229, 258.
[3]  58 Am Jur, Zoning §§ 14, 18, 21.
[4]  58 Am Jur, Zoning § 21.
[5]  58 Am Jur, Zoning § 14.
[6]  58 Am Jur, Zoning § 16.
[7, 8]  58 Am Jur, Zoning §§ 16, 20, 21, 229.
[9]  58 Am Jur, Zoning §§ 21, 33.
[10]  58 Am Jur, Zoning §§ 20, 21.
[11]  58 Am Jur, Zoning §§ 21, 229, 231.
[12]  58 Am Jur, Zoning §§ 16, 21, 256.
[13]  58 Am Jur, Zoning §§ 21, 22.
[14]  5 Am Jur 2d, Appeal and Error §§ 702, 703.
[15]  5 Am Jur 2d, Appeal and Error § 822.
[16]  5 Am Jur 2d, Appeal and Error §§ 819, 822.
[17]  58 Am Jur, Zoning §§ 20–22, 224.
[18]  58 Am Jur, Zoning § 229.
[19]  58 Am Jur, Zoning §§ 20–22, 33, 146, 258, 259.
[20, 21]  58 Am Jur, Zoning §§ 21, 22, 140.

3. SAME—ZONING ORDINANCES—POLICE POWER.

*Municipal zoning ordinances are a valid exercise of the police power, when they are reasonable in their provisions.*

4. SAME—ZONING ORDINANCES—REASONABLENESS.

*The reasonableness of a municipal zoning ordinance is the test of its legality.*

5. SAME—ZONING ORDINANCES.

*Each case to test the validity of a municipal zoning ordinance must be determined on the basis of its own facts and circumstances.*

6. SAME—ZONING ORDINANCE—PRESUMPTIONS—BURDEN OF PROOF.

*A duly adopted municipal zoning ordinance is presumed to be valid, and the burden of proof is on the challenger of its validity to establish his claim.*

7. SAME—ZONING ORDINANCES—LOCAL LEGISLATIVE BODY.

*The determination of a local legislative body as to a municipal zoning ordinance is final and conclusive unless it is shown the body had acted arbitrarily or unreasonably.*

8. SAME—ZONING ORDINANCES—COURTS.

*No court may modify or alter a municipal zoning ordinance unless it can be shown that the local legislative body has acted arbitrarily or unreasonably.*

9. SAME—ZONING ORDINANCES—RESIDENTIAL USE—VALUE.

*Zoning ordinance which restricted plaintiff's 2.4-acre parcel at intersection of heavily traveled roads for residential uses held, not unreasonable, where the premises had been used for nonconforming uses prior to adoption of the ordinance, the ordinance does not effect a confiscation although property is substantially less valuable for residential than commercial uses, it is usable for residential purposes, the harmful effect upon surrounding property being a matter for consideration.*

10. SAME—MAJOR INTERSECTIONS—COMMERCIAL ZONING—ARBITRARINESS.

*Fact that a substantial majority of the properties at major intersections in the city were zoned commercial would not make the residential zoning of plaintiff's property, also located at a major intersection, necessarily arbitrary, where it was located in a dominantly residential area and arbitrariness was not demonstrated by a showing that other major intersections where commercial zoning existed were in neighborhoods similar to the one at which plaintiff's is located.*

SEPARATE OPINION FOR REVERSAL.

ADAMS, J.

11. MUNICIPAL CORPORATIONS—ZONING ORDINANCE—REASONABLENESS.

*A court may declare an existing zoning ordinance of a city unconstitutional as applied to a particular property, but the court could not replace the void so made in the city's zoning with what it thought desirable, since the only proper concern of the court is whether the property owner establishes the unreasonableness of the zoned use.*

12. SAME—ZONING ORDINANCE—REASONABLENESS—BURDEN OF PROOF.

*A city zoning ordinance is presumed to be reasonable, hence, the city does not have the burden of meeting any test, one attacking the ordinance having the burden of proving it to be unreasonable.*

13. SAME—ZONING—RESIDENCE—REASONABLENESS—EVIDENCE.

*Zoning of property as residential* held, *not to have been shown to be unreasonable, where all the experts, save one, testified the property was suitable for residential purposes and all the experts, save one, testified that commercial zoning would result in uses detrimental to the area.*

SEPARATE OPINION FOR AFFIRMANCE.

KELLY and O'HARA, JJ.

14. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW.

*The Supreme Court hears and considers chancery cases de novo on the record on appeal.*

15. SAME—CHANCERY CASES—FINDINGS OF TRIAL COURT.

*The Supreme Court gives considerable weight to the findings of the trial judge in equity cases primarily because he is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity.*

16. SAME—CHANCERY CASES—FINDINGS OF TRIAL COURT.

*The Supreme Court will not ordinarily disturb the findings of the trial judge in an equity case unless, after an examination of the entire record, it reaches the conclusion that it would have arrived at a different result had it been in the position of the trial court.*

17. MUNICIPAL CORPORATIONS—ZONING ORDINANCE—RESIDENTIAL USE
—COMMERCIAL PROPERTY—VIEW OF PREMISES.

*Finding of trial judge in suit to declare zoning ordinance unconstitutional as to plaintiff's 2.4-acre tract at intersection of 2 major highways because unreasonable and arbitrary, where it provided for residential use of property hitherto used for commercial purposes held, correct, where the trial judge had the advantage of inspecting plaintiff's and adjoining property.*

18. CONSTITUTIONAL LAW—SEPARATION OF POWERS—DECLARATION OF
UNCONSTITUTIONALITY OF ZONING ORDINANCE.

*Finding by trial court that zoning ordinance was unconstitutional as applied to plaintiff's property, located at intersection of 2 major highways held, not to have constituted a discharge of a legislative function.*

19. SAME—ZONING ORDINANCE—RESIDENCE USE—COMMERCIAL PROP-
ERTY.

*Finding of trial court that ordinance zoning for residence use plaintiff's 2.4-acre tract at intersection of 2 major highways thereby not permitting extension of nonconforming use of property that had been devoted to commercial uses before the ordinance became effective was unreasonable and arbitrary held, amply sustained, there being testimony that the general practice was to zone intersection property commercial.*

20. SAME—ZONING ORDINANCE—DIMINUTION OF PROPERTY VALUES.

*The extent to which property values are diminished by provisions of a municipal zoning ordinance must be given consideration in determining whether the invasion of property rights under a purported police power is unreasonable and confiscatory.*

21. SAME—ZONING ORDINANCE—REASONABLENESS—POLICE POWER.

*City zoning ordinance restricting use of plaintiff's commercially used 2.4-acre tract at intersection of 2 major highways to residence purposes thereby reducing its value by more than 50% held, not to have met the test of reasonableness by bearing a substantial relation to the objectives of police power, the preservation of the public health, safety, morals, and general welfare of the community as a whole.*

Appeal from Oakland; Moore (Arthur E.), J. Submitted February 5, 1965. (Calendar No. 48. Docket No. 50,695.) Decided March 8, 1966.

Bill of complaint by Anna B. Bowman against City of Southfield, a Michigan municipal corporation, and others to declare the zoning ordinance of defendant municipal corporation unconstitutional as it affects plaintiff's property and to enjoin enforcement of ordinance. Judgment for plaintiff. Defendants appeal. Affirmed by an equally divided court.

*Davis, Hayward, Rann & Slavens,* for plaintiff.

*James M. Ginn,* for defendants.

SMITH, J., (*for reversal*). Plaintiff sought and obtained judgment against defendant city and its officials declaring a zoning ordinance void and unenforceable, insofar as applied to plaintiff's property. Defendants appeal.

In 1959, the city adopted an ordinance which zoned plaintiff's property residential. Although the property is located in a residential area, plaintiff has used the property for commercial purposes since 1941.* Because of commercial use prior to enactment of the zoning ordinance, plaintiff acquired a nonconforming use which, of course, permits plaintiff to continue using the property as before, but places certain limits upon what may be done by way of altering or rebuilding structures on the nonconforming premises. When plaintiff was refused a building permit to make certain alterations, this suit was filed.

The property in question is located at the southeast corner of Inkster road and Nine Mile road in the city of Southfield. Plaintiff owns a parcel of land consisting of approximately 10.4 acres. In her

---

* This includes a catering service known as the Bowman Farm Cupboard, and a delicatessen and specialty food store. Other uses include a picnic ground, a site for a wedding ceremonial service, and a guest house or apartment.

bill of complaint filed July 30, 1962, plaintiff sought relief as to the entire parcel. However, at the beginning of trial, plaintiff's counsel stated, in his opening statement, that plaintiff would not offer proofs as to the entire 10.4-acre parcel, but rather would limit proofs to a 2.4-acre portion denominated parcel A. At the conclusion of proofs, plaintiff made a motion to amend the complaint to include only parcel A. Over defendants' objections, the motion was granted.

The property is located in what was conceded and found to be a residential area. Northeast of the intersection of Inkster road and Nine Mile road is a single-family residential area. Southeast of the intersection, that is, south of plaintiff's property is another single-family residential area. Both northwest and southwest of the intersection lie residential subdivisions. The only other commercial use in the vicinity is a real estate office on the northeast corner which was built as a model home and therefore has the appearance of a residence.

The case was fully tried; testimony was presented as to values for both residential and commercial uses, character of the area and effect of commercial zoning upon surrounding property, suitability of the property for residential purposes and availability of financing therefor; also, testimony was adduced as to traffic in and about the intersection as bearing upon the reasonableness of residential zoning.

As to the value of parcel A, the 2.4-acre parcel to which plaintiff confined her proofs, the experts who testified on both sides ranged from $31,200 to $67,000 for commercial use, and from zero to $15,000 for residential use. The average valuation of parcel A for commercial use was $53,540 and for residential use $7,770. As to the character of the area and the effect of commercial zoning upon the surrounding property, it was conceded that the area is residential

in character and there was substantial testimony that commercial zoning would have an adverse effect upon surrounding residential properties. As to the suitability of the property for residential purposes, the overwhelming weight of the testimony on both sides was that parcel A was suitable and usable for residential purposes. There was no question but that financing was available for the development of the parcel for residential use. As to traffic at the intersection, the trial court found that Nine Mile road and Inkster road are both heavily traveled, although we are unable to find from the record any testimony upon which the court could base such a finding unless it was based upon the personal observation of the trial judge who visited the site.

Additionally, plaintiff introduced testimony designed to show that the best use for her property would be commercial, more particularly "a neighborhood commercial shopping outlet." There was testimony of the number of families living in the immediate neighborhood and the approximate amounts spent by each for food. Further, it was said that there is an adequate population within the area to justify the establishment of a food supermarket, at the very least. It was shown that the nearest shopping area was a mile away, a five-minute drive by car. Other shopping centers serving the neighborhood were said to be from 2 to 5 miles distant. Plaintiff also showed that most of the properties at main road intersections in the city of Southfield are zoned commercial, claiming that the denial of commercial zoning to her property is therefore arbitrary and capricious.

The trial court found that plaintiff's property is located "within a general residential area" and that the specific parcel in question, parcel A, "could be used for residential purposes but only at greatly

diminished value." The trial court, after stating that the sole issue was one of constitutional reasonableness, concluded as follows:

"1. Plaintiff's property is particularly well suited for a desirable shopping center for the area in question.

"2. There is a definite need for a shopping center in this area.

"3. The present use of plaintiff's property and its future use as a shopping center are not detrimental in any respect to any of the surrounding property.

"4. The highest and best use for this property is for such shopping center.

"5. Though the property might conceivably be used for residential purposes, it would be only at a greatly deflated and unjustifiable reduced value.

"6. From the standpoint of municipal planning, the only justification for placing this property in a residential zone would be solely for esthetic reasons."

Here, upon review *de novo,* defendants, the city and its officials, contend that the trial court erred in such findings and conclusions. They say that on the basis of the surrounding neighborhood being residential, the property itself suitable for residential development with financing available, this, coupled with other relevant factors, makes the zoning ordinance reasonable. They also argue that "The trial court in determining this case upon its conclusions as to *suitability, desirability and need for a shopping center* in the area, was actually sitting as a super-zoning commission. It *was performing the legislative function.* * * * It was substituting its judgment for that of the legislative body in making this decision." (Emphasis supplied.)

Plaintiff's position is that the zoning ordinance is arbitrary, unreasonable, and confiscatory because: (1) it is the result of legislative caprice; (2) it fails to serve a useful purpose for the general welfare of the community; (3) the ordinance substantially destroys the value of the property; and (4) "a zoning ordinance must provide for the highest and best use of property, and should provide for the reasonable business needs of the community."

We are in substantial agreement with the position of defendants and therefore must reverse. In the first place, the trial court's conclusions, quoted above, clearly indicate that it was substantially discharging a legislative function in determining the "desirability" and "need" for a shopping center. In the second place, the facts clearly preponderate in the direction of reasonableness of the ordinance.

Certain basic principles are summed up in *Anderson* v. *City of Holland,* 344 Mich 706, where it was said that:

"The legal principle is firmly established that zoning ordinances, when reasonable in their provisions, are a valid exercise of the police power. *Village of Euclid* v. *Ambler Realty Company,* 272 US 365 (47 S Ct 114, 71 L ed 303, 54 ALR 1016) ; *Austin* v. *Older,* 283 Mich 667. The reasonableness of such an ordinance is recognized as the test of its legality. *Hitchman* v. *Township of Oakland,* 329 Mich 331. In the application of the test indicated it necessarily follows that each case of this character must be determined on the basis of its own facts and circumstances. *Senefsky* v. *City of Huntington Woods,* 307 Mich 728 (149 ALR 1433). It must also be borne in mind that the presumption of validity attends zoning regulations, and that the burden of proof is on one challenging such an ordinance to establish his claim. *Portage Township* v. *Full Salvation Union,* 318 Mich 693; *Northwood Properties Company* v. *Royal Oak City Inspector,* 325 Mich 419."

The line must continually be drawn between what is the proper province of the local legislative body and a reviewing court. It was said in *Brae Burn, Inc.,* v. *City of Bloomfield Hills,* 350 Mich 425, at page 431:

"Our laws have wisely committed to the people of a community themselves the determination of their municipal destiny, *the degree to which the industrial may have precedence over the residential,* and the areas carved out of each to be devoted to commercial pursuits. With the wisdom or lack of wisdom of the determination we are not concerned. The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life. Let us state the proposition as clearly as may be: It is not our function to approve the ordinance before us *as to wisdom or desirability.*" (Emphasis supplied.)

Unless it is shown that the local legislative body acted arbitrarily or unreasonably, its determination is final and conclusive. *Tel-Craft Civic Association* v. *City of Detroit,* 337 Mich 326.

The *Brae Burn Case* is particularly helpful in resolving the instant case because it presented several issues strikingly similar to ones presented here. In *Brae Burn,* a variance had been granted for the operation of a rest home located in an area zoned residential. Upon refusal of a permit to enlarge facilities, suit was instituted. In addition, part of the premises had been conveyed away to other parties who sought to erect a commercial building on a site adjacent to the rest home. There was a substantial disparity of value between property if used for residential purposes or for commercial purposes. Also similar in circumstance to the instant case was the fact that although the property was located in a residential area, there were several commercial uses nearby. Similarly, too, was

the fact that in *Brae Burn* the property was located on a busy thoroughfare, teeming with vehicular traffic.

As indicated, we are not in accord with the holding of the trial court nor in the reasoning of plaintiff offered in support thereof, especially where it dwells upon the need and desirability of a shopping center for the area in question. In *Brae Burn* we held that the wisdom and desirability of a zoning ordinance are matters particularly within the province of the local legislative body. Unless it can be shown that the local legislative body acted arbitrarily or unreasonably, neither this Court nor any other court may modify or alter the ordinance.

The question remains then whether or not it was shown upon the record before us that the legislative body acted unreasonably or arbitrarily. In this case, there is no question but that the property is located in a residential area. There was substantial testimony tending to show that to permit commercial zoning at the site in question would have harmful effects upon the surrounding residential properties. Assuming that both Nine Mile road and Inkster road are heavily traveled, this, too, is only one of several factors to be considered. As said in *Brae Burn,* p 432, "We have no 'Woodward avenue rule,' no 'traffic' rule as such, no 'diminution in value' rule. All these are merely factors to be considered, pieces of the mosaic."

We may say also that the testimony as to the difference in value between residential and commercial use does not prove confiscation. Again, the point is well delineated in the *Brae Burn Case, supra*:

"Disparity in values between residential and commercial uses will always exist. In the leading case of *Village of Euclid* v. *Ambler Realty Co.,* 272 US

365 (47 S Ct 114, 71 L ed 303, 54 ALR 1016), Mr.
Justice Sutherland, in upholding the ordinance,
noted that the property involved was worth about
$10,000 per acre for industrial use, as compared with
$2,500 per acre for residential use. If such a show-
ing serves to invalidate an ordinance, the efforts of
our people to determine their living conditions will
be hopeless. To avoid 'confiscation' in this sense
(the obtaining of the highest dollar for one particu-
lar lot) will result in confiscation of far greater
scope in property values in the municipality as a
whole due to its inability to control its growth and
development. It must be stressed that we are not,
on this record (as we pointed out in *Anderson* v.
*City of Holland,* 344 Mich 706, 710) 'dealing with a
situation in which the property involved is unsuit-
able for residential purposes and has little or no
value if so restricted.' "

We do not have the situation here of substantial
disparity in value coupled with unsuitability of the
property for residential purposes. True, there is
substantial disparity in value between the two con-
tending uses, but by the nearly unanimous opinion
of witnesses on both sides the property in question
may be used for residential purposes. This is unlike
the situation in *Fenner* v. *City of Muskegon,* 331
Mich 732; *City of North Muskegon* v. *Miller,* 249
Mich 52; or in *Paka Corporation* v. *City of Jackson,*
364 Mich 122, and other similar cases in which it
has been held that devaluation was only one factor
in the consideration of whether an ordinance is un-
reasonable, but that where an ordinance restricts
property to a use for which it is not adapted and
thereby destroys the greater part of its value a
question of reasonableness is presented.

Finally, plaintiff claims that because of substan-
tial majority of properties at major intersections
in the city of Southfield are zoned commercial that
this shows that the local legislative body was arbi-

trary and capricious in zoning plaintiff's property
for residential use. This in and of itself proves
nothing. We might observe, however, that if it
were shown that each intersection where commercial
zoning exists is substantially similar to the one in
question, that is, similar neighborhood with similar
uses and similar zoning, then there could be an issue
or arbitrariness.

For the reasons above discussed, we are con-
strained to reverse the judgment of the trial court
and direct the entry of judgment in favor of de-
fendants. Costs to defendants.

DETHMERS, SOURIS, and ADAMS, JJ., concurred with
SMITH, J.

ADAMS, J. (concurring in reversal). I agree with
Justice SMITH. The trial court erroneously dis-
charged a legislative function. The trial judge con-
cluded by finding the ordinance was "unreasonable
and unconstitutional"; but, if his opinion is read
as a whole, it is clear his concern was with the suit-
ability of the land for a use he thought was needed.

"Plaintiff's property is particularly well suited
for a desirable shopping center for the area in
question."

The fallacy with this is that the trial court did
not have the power to zone plaintiff's property for a
shopping center. The court could declare the exist-
ing zoning unconstitutional but it could not replace
the void this made in the city's zoning with what it
thought desirable. *Northwood Properties Company*
v. *Royal Oak City Inspector,* 325 Mich 419, 423, 424;
*Tel-Craft Civic Association* v. *City of Detroit,* 337
Mich 326, 331; *Roll* v. *City of Troy,* 370 Mich 94, 99.
The only proper concern of the court was whether

plaintiff had established the unreasonableness of the zoned use.

Justice Kelly shifts plaintiff's burden of proof upon that issue to the defendant:

*"We do not agree* with *the city* that it *has met the test of reasonableness* by showing that plaintiff's property is adapted to residential use." (Emphasis supplied.)

The burden is not on the city to meet any test. A zoning ordinance is presumed to be reasonable. *Highland Oil Corporation* v. *City of Lathrup Village,* 349 Mich 650, 660; *Scholnick* v. *City of Bloomfield Hills,* 350 Mich 187, 196. Anyone attacking its validity must bear the burden of proving it unreasonable. *Patchak* v. *Township of Lansing,* 361 Mich 489, 495; *Alderton* v. *City of Saginaw,* 367 Mich 28, 33; *Padover* v. *Township of Farmington,* 374 Mich 622, 633, 641.

Even if one shifts the burden of proof to the city, the evidence for the plaintiff is scanty indeed. All the experts, save one, testified that the property was suitable for residential purposes. All the experts, save one, testified that commercial zoning would result in uses detrimental to the area.

Kelly, J. (*for affirmance*). After carefully considering the 176 pages of the appendix recording the testimony of plaintiff's 8 and defendant's 5 witnesses, I dissent, because I cannot conclude that I would have arrived at a different result had I been in the position of the trial judge.

That this is a proper test before reversing a trial judge in a zoning case is made clear by the following quotation from *Christine Building Company* v. *City of Troy,* 367 Mich 508, at p 517:

"We hear and consider chancery cases *de novo* on the record on appeal. * * * [Cases cited.] This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases. This is primarily because the trial judge is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity. We do not ordinarily disturb the findings of the trial judge in an equity case unless, after an examination of the entire record, we reach the conclusion we would have arrived at a different result had we been in the position of the trial judge. The trial judge here found, after listening to the witnesses testify and examining the exhibits, that the plaintiffs had shown the zoning ordinance to be unreasonable and arbitrary. After an examination of the entire record, we feel the trial judge reached a correct conclusion."

In addition to seeing and hearing the witnesses testify, the trial judge, in the instant case, had the added advantage of inspecting plaintiff's and adjoining property.

I believe it is obvious that such inspection would be unusually helpful, after considering the following terse description of plaintiff's and adjoining property located at the corner of Inkster road and Nine Mile road as given by the city's main witness, *viz.*, city planner George Vilican, Jr.:

"Beginning in the north-east quadrant, north of Nine Mile road and in the city of Southfield we have a rather rugged piece of terrain developed in acreage, single-family development. It is commonly known as the Ravines, I think this a proper name of the subdivision. However, the area in question is built on sloping sites, some flat sites. It is rapidly developing for the size of the lots. It is a rapidly developing residential area. This lies north of the property in question and goes well beyond

it to the east but on the north side of Nine Mile. Moving to the southeastern quadrant, including the property in question we have a good deal of undeveloped land, beginning at the corner and approximately 500, 600 feet to the east of the intersection we have a ravine crossing through the property in question, not necessarily the parcel in question, the court case, but owned by this plaintiff, exactly east of the parcel now in court and this is undeveloped primarily I would imagine because of the rugged terrain.

"The land to the south of the ownership of the plaintiff is developed in single-family residential, not totally but I would say predominately because more than 50% of the land area is developed in residential immediately to the south. To the west of Inkster and across from the parcel in question we have a single-family residential subdivision, built in 1959 basically. The plat was approved in 1958, and it is totally built.

"And in the northeast, northwest quadrant, north of Nine and west of Inkster we have an area that still has a good amount of open land but in the immediate intersection there again is a subdivision built on topography of extreme grade differences, that is, built up with acreage development."

I disagree with my Brother's claim that the trial judge, in his written opinion, discharged "a legislative function in determining the 'desirability' and 'need' for a shopping center" which constituted reversible error because "the line must continually be drawn between what is the proper province of the local legislative body and a reviewing court."

In the written opinion, the trial judge did make known what he believed the testimony proved *in re* supermarkets, but he did not, in his findings of fact, in any way refer to the supermarkets in the final paragraph of his opinion, as revealed by the following quotation:

"It is therefore the finding of facts, the conclusion of law and the opinion of this court that the ordinance of the defendant city of Southfield is unreasonable and unconstitutional as applied to plaintiff's property.

"An appropriate judgment restraining enforcement may be entered accordingly, with costs taxed to the plaintiff."

Likewise, the judgment in no way referred to supermarkets, but was confined to the finding that the ordinance was "unreasonable and unconstitutional insofar as the said ordinances restrict the use of the land of the plaintiff to residential purposes" and further provided that defendant was enjoined from enforcing the ordinance "insofar as the said ordinances restrict the use of the land of the plaintiff to residential purposes."

The court did not discharge a legislative function in finding the ordinance unreasonable and the record discloses no reason why this Court should criticize the trial court for the way the trial was conducted.

I cannot agree with my Brother's statement that "the *Brae Burn Case* is particularly helpful in resolving the instant case because it presented several issues strikingly similar to one presented here."[1]

In *Brae Burn,* we were considering 40 acres zoned and used as residential, a former estate with a main building of 20 rooms and 8 baths and a number of accessory buildings set back a substantial distance from Woodward avenue.

The zoning board, in granting plaintiff a variance, set forth in the variance grant that they did so because of the fact that a denial would create a great hardship for him and that plaintiff, who had purchased the property with the intention to operate

---

[1] *Brae Burn, Inc.,* v. *City of Bloomfield Hills,* 350 Mich 425.

it as a convalescent home, was granted that right upon his express promise "that not more than 30 persons will be cared for in said home" and that plaintiff "will not change the character of the neighborhood involved and will conform to the spirit of the ordinance."

After operating for some time under his promise, plaintiff started his suit to invalidate the ordinance because he was denied a building permit to enlarge the quarters to accommodate more than the agreed upon 30 patients, and also to construct a 3-story office building on the premises.

In our present case plaintiff, Mrs. Bowman, had, for 18 years prior to the enactment of the 1959 ordinance, conducted a successful business progressing from a retail butter, eggs, poultry, and baked goods business to a retail and wholesale catering business, to picnic facilities on the grounds for business organizations, and weddings from noon until 5 o'clock and evenings from 6 to 11, accommodating as many as 400 in a day. After the city zoned her property residential, she continued to operate commercially, not by city grant but by legal grant as a nonconforming use, developing a business of $120,-000 per annum.

Mrs. Bowman commenced this action after she was denied a building permit to add to the rear of her building additional space for baking and taking care of food.

The city of Southfield is bounded on the south by Eight Mile road, on the east by Greenfield road and on the west by Inkster road. The mile roads run east and west through the city of Southfield and such mile roads are intersected at one mile intervals by north and south highways, as a result of which each mile road intersects 7 north and south highways within the city. On Eight Mile road all 7 of such intersections are zoned commercial or

industrial. On Nine Mile road, 6 of the 7 inter-
sections are zoned commercial or industrial, the
sole exception being the property of the plaintiff
at Nine Mile road and Inkster road. On Ten Mile
road, 6 of the 7 intersections are zoned commercial
or industrial. Plaintiff's property is zoned *contra*
to the general practice of zoning intersection prop-
erty commercial.

Plaintiff's witnesses testified in detail why plain-
tiff's use of her land should not be restricted to
residential use and gave reasons why plaintiff's land
was adapted to commercial use, especially for a
neighborhood market. There was ample testimony
to sustain the trial judge's conclusion in this regard.

An important question that the zoning authorities
should have asked and answered, and that this Court
must ask and answer, is: Can plaintiff's property
be used commercially without detrimental effect to
adjoining property?

My Brother states:

"As to the character of the area and the effect
of commercial zoning upon the surrounding prop-
erty, it was conceded that the area is residential
in character and there was substantial testimony that
commercial zoning would have an adverse effect
upon surrounding residential properties."

The Court concluded:

"The present use of plaintiff's property and its
future use as a shopping center are not detrimental
in any respect to any of the surrounding property."

The city's main witness, city planner George Vili-
can, Jr., admitted that plaintiff had conducted her
commercial use of the property for many years in
a way that was not detrimental to adjoining prop-
erty.

No testimony was offered by any resident, or association of residents, that changing plaintiff's restriction would be detrimental to adjoining property.

That the city did not conclude that all the property adjoining the intersection must be kept residential is evidenced by allowing a real-estate office to operate across the street from plaintiff's property at the northeast corner of Inkster and Nine Mile road.

Five witnesses testified *in re* effect of the proposed use of surrounding property, 3 for plaintiff and 2 for defendant.

Defendant's witness, city planner George Vilican, Jr., expressed the opinion that commercial development would be detrimental, but admitted that the subject property was effectively screened from the residential area to the east and north. Defendant's witness Bliss, an appraiser, expressed the same opinion as city planner Vilican.

Plaintiff's witness, city planner Carl Goldschmidt, testified that commercial zoning, such as neighborhood convenience facilities, would not in any way be detrimental to the surrounding residential area and, city planner Norman Bowman (plaintiff's son) testified that using plaintiff's property for commercial purposes would not be detrimental to the surrounding residential area. Ralph W. Conselyea testified as follows:

"*Q.* You have also stated another use for the property could be commercial?

"*A.* That is correct, sir. Now, you are referring to the corner?

"*Q.* Yes, sir.

"*A.* Yes, sir.

"*Q.* In your opinion as a broker, would a commercial use of this corner have an adverse effect

on the properties to the west? The residential property facing the city property?

"*A.* I could concede it could have a beneficial effect.

"*Q.* Could it also have an adverse effect?

"*A.* Depending on the type and usage of type of building.

"*Q.* Type of use and type of layout?

"*A.* That is correct, sir."

We find nothing in the present record that would cause us to disagree with the trial court who, after seeing and listening to witnesses testify and inspecting the neighborhood property, concluded:

"The present use of plaintiff's property and its future use as a shopping center are not detrimental in any respect to any of the surrounding property."

In a recent decision (*Smith* v. *Village of Wood Creek Farms,* 371 Mich 127 [syllabus 4]), we again made known our position in regard to diminution of property values caused by zoning ordinances, stating:

"The extent to which property values are diminished by provisions of a municipal zoning ordinance must be given consideration in determining whether the invasion of property rights under a purported police power is unreasonable and confiscatory."

The testimony in the present case establishes that defendant city, by restricting plaintiff's property to residential use, has reduced the value of her property considerably more than 50 per cent.

We do not agree with the city that it has met the test of reasonableness by showing that plaintiff's property is adapted to residential use, and agree with the trial court's conclusion that:

"Though the property might conceivably be used for residential purposes, it would be only at a greatly deflated and unjustifiable reduced value."

Defendant city's ordinance, as applied to plaintiff's property, fails to meet the test that we have often applied, *viz*:

"A municipal zoning ordinance, to be valid, must bear a direct and substantial relation to the objectives of police power, the preservation of the public health, safety, morals, and general welfare of the community as a whole."[2]

The judgment of the trial court, that the ordinance of defendant city of Southfield is unreasonable and unconstitutional as applied to plaintiff's property, is affirmed. Costs to appellee.

O'HARA, J., concurred with KELLY, J.

T. M. KAVANAGH, C. J., and BLACK, J., concurred in the result.

---

[2] *Alderton* v. *City of Saginaw*, 367 Mich 28 (Syllabus 1).