FENNER v. CITY OF MUSKEGON.

1. Municipal Corporations—Zoning Ordinances Must Be Reasonable.

It is necessary that a municipal zoning ordinance be reasonable and its reasonableness becomes the test of its legality.

2. Same—Zoning Ordinances—Residence Use—Confiscation.

Application of city zoning ordinance, so as to restrict to residence use, plaintiff's 23-acre tract of low, marshy and boggy land worthless for farming, near an industrial area and adjacent to muck farm lands, *held*, unreasonable and confiscatory of his property, a part of which that is not under water he seeks to use for storage of trucks, bulldozers and other machinery used in his business of contract hauler.

Appeal from Muskegon; McDonald (Archie D.), J. Submitted October 4, 1951. (Docket No. 33, Calendar No. 45,221.) Decided December 3, 1951. Rehearing denied January 7, 1952.

References for Points in Headnotes
[1, 2] 58 Am Jur, Zoning §§ 21, 22, 33, 66–68, 70.

Bill by Myron Fenner and wife against city of Muskegon to have zoning ordinance declared void as it relates to their property. Decree for defendant. Plaintiffs appeal. Reversed and decree for plaintiffs entered.

*George D. Stribley,* for plaintiffs.

*Edward C. Farmer,* City Attorney, and *H. Winston Hathaway,* Assistant City Attorney, for defendant.

REID, C. J.    Plaintiffs filed their bill of complaint to enjoin the city from applying to the property of plaintiffs the zoning ordinance of the city of Muskegon, adopted March 9, 1925, and prayed that the zoning ordinance spoken of be decreed null and void as far as it affects the lands of plaintiffs described in the bill. From a decree dismissing the bill, plaintiffs appeal.

In the zoning ordinance, plaintiffs' lands hereinafter referred to, were zoned under the portion of the ordinance which is as follows:

"Sec. 3 'A' Residence use regulations:    Unless hereinafter provided, no building or premises shall be used and no building shall be hereafter erected or altered, except for one or more of the following uses:

"1. Single family dwellings

"2. Churches, schools and libraries

"3. Repealed August 2, 1938

"4. Private clubs

"5. Accessory buildings (see section 9, subd 4) and uses incident to any of the above uses when located on same lot and not involving the conduct of a retail business," et cetera.

Plaintiff Fenner had constructed on plaintiffs' said premises a storage building, 50 feet by 100 feet, to house various trucks, bulldozers and other machin-

ery used in his business as a contract hauler. He had failed to secure a building permit, and as a consequence a warrant was issued for violation of the city zoning ordinance involved in this suit. Action on said warrant was enjoined pending the hearing of this cause.

Plaintiffs' lands in question are situated in the city of Muskegon and in the Ryerson creek valley one-quarter mile east of an industrial area and are bounded on the north by Sumner street, on the west by Wood street, on the south by an elevation of land rising from the south of the Ryerson creek valley, and on the east by muck farm lands, and contain roughly 23 acres, about 14 of which have been used at one time or another for farming celery. A considerable portion of plaintiffs' lands are under water. Sumner street is not improved and is not maintained by the city of Muskegon as a through road. Wood street is improved and is a north and south thoroughfare. Except for Wood street and Sumner street, there are no other streets through or near the lands.

The plaintiffs' lands are described in the testimony as: Low land with a lot of brush and cattails, marshy and boggy, inhabited by snakes, muskrats and barn rats, traversed by Ryerson creek and celery farm drains.

The city of Muskegon established 3 storm sewer outlets, one 5 feet in diameter, at the south side of the lands. There are trash dumps on both the north and south banks or bluffs near the property. The land is not suitable for the erection of residences or homes, or buildings of any kind without expending substantial sums for footings, excepting a strip along the northerly line of the property including an area where plaintiffs have removed sand. To the west, there are no houses in the valley across Wood street on the west side of the street; west of Wood street

the land is low and marshy, not cultivated or used, and grown up with cattails. There is an old home at the northwest corner of Wood street and Sumner street now containing 4 apartments and some low quality homes on top of the bluff.

Wood street was put in across the boggy Ryerson creek valley and has been settling for a long time and is filled in higher than the land on either the east or west side. A bridge across the creek was rebuilt due to settling and unstable subsoil.

The lands are so marshy that it is not possible to walk across them from south to north.

In 1938, the lands were flooded by reason of a heavy rain and the water carried into Ryerson creek valley from 3 storm sewers of the city. Black topsoil was carried away, exposing underlying marl. The land was infected with the "yellows," a disease of celery plants, became unproductive and lost its fertility, and at the time of bringing this action, the land was unsuitable and worthless for farming, with a considerable question whether it would pay to recondition the land for farming purposes. In 1946 the buildings on plaintiffs' lands consisted of greenhouses and storage sheds; city water was available, but there were no sewers. Houses nearby to the lands of plaintiffs are of the "blighted area" type.

Plaintiff Fenner purchased the land in 1946 for storage purposes in connection with his work as a contractor and because the sand hill had an advantage and further, as a contractor he is among other things engaged in the excavating business and in making fills, and he proposed to store heavy vehicular equipment on the land, consisting of trucks, trailers and commercial vehicles of all kinds, and to sell the earth which comprised the former celery beds for use in constructing residential yards and gardens.

The court found (in part):

"It [the land] is mucky, wet, sandy and low, and it would seem always in danger in the event of flood or high waters.

"Up to this point it would seem that the past owners and present owner have used it to the best of their ability, for the only purpose to which it is adaptable."

Clearly, the land is not suitable for residential purposes nor any purposes under class "A" of the zoning ordinance. In the case of *City of North Muskegon* v. *Miller,* 249 Mich 52, we say at page 57:

"It is, however, necessary that a zoning ordinance be reasonable, and the reasonableness becomes the test of its legality."

We conclude that the application of the zoning ordinance to the lands in question is unreasonable and in practical effect, confiscatory of plaintiffs' property.

The decree of the lower court sustaining application of the ordinance to plaintiffs' lands is reversed. The decree of this Court will be entered as prayed for by the plaintiffs. Costs to plaintiffs.

BOYLES, NORTH, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred. BUTZEL, J., did not sit.