BURGESS, PLAINTIFF, *v.* GREENFIELD BUILDERS, INC., DEFENDANT.

Common Pleas Court, Allen County.

No. 47590.

*Mr. Robert L. Balyeat*, prosecuting attorney, *Mr. James Blair* and *Mr. Walter M. Lawson, Jr.*, for plaintiff.
*Messrs. Meredith, Meredith & Tait*, for defendant.

(McNEILL, J., of Van Wert County, sitting by assignment.)

McNEILL, J. The Trustees of Perry Township, through their building inspector, are seeking to enjoin the defendant from erecting certain houses in Perry Township. Perry Township is zoned residentially for only half-acre lots. These lots have a frontage of fifty-five feet and insufficient depth to comply with the zoning requirements. If the zoning requirements are legal, the injunction should be granted.

At this time, several of the houses have been erected, and some are in an intermediate stage. Prior to zoning in Perry Township, this plot was laid out into lots, but the same was never recorded. Defendant then purchased the property and secured approval of various agencies for the project, but the same was not submitted to Perry Township. Part of the difficulty was that it was not realized this property was within Perry Township, as the City of Lima extends immediately to the west and to the north. When it was ascertained that the land lay within Perry Township, a request for a variance was filed. This was granted, with certain changes required, which was complied with, but it was then found that no notice for public hearing had been given. A proper public hearing was then had and the variance was refused. Work progressed after the invalid grant of variance. A preliminary hearing on the

502

injunction was held and by agreement, certain work was allowed to progress as the Trustees wanted to avoid more than a nominal bond.

An examination of the surrounding neighborhood is essential to understand the facts of this case. To the north is the City of Lima. The lots here are predominately forty feet. The housing is primarily from six to twelve thousand dollar class. To the west is also the City of Lima. Here the housing varies from shacks to approximately ten thousand dollars homes, and most lots are forty feet. To the southwest is a multiple housing development erected during the wartime. The lots are larger, but they are occupied by multiple units, which average no more than forty feet per unit. These properties in Lima have water and sewers. Adjacent to this, and next to defendant's property is vacant land owned by the Ohio Steel Foundry. This company originally owned the housing sites as part of this parcel, but made the land available for the housing development for their workers. This unused piece has always been vacant. Both to the southwest of the housing site and south of defendant's site is a collection of shacks. These are on lots of forty feet or less, and may have more than one to a lot. The evidence is undisputed that their value is such that they have no loan value. To the southeast are forty and fifty-five foot lots occupied by houses from five or six to ten to twelve thousand dollar class. North of them is a junk yard and a few houses. Between the junk yard and defendant's property is unused land. This completes the circle.

All the property is within Perry Township and is without public water and public sewage. Some of the sewage goes to leechbeds and some to outdoor toilets. The water supply in Perry Township is by private wells. The defendant's property is supplied with water and sewers from the City of Lima. This includes fire hydrants.

There is no railroad in the immediately vicinity, they being considerably to the west or to the east. Outside of the junk yard none of the property has ever been used industrially or commercially. There are only minimum streets in this area. The one tract owned by an industry has been used only for a wartime housing development.

The zoning ordinance requires certain set backs, side lots, minimum size and area requirements for residences. However, there are no requirements for industrial uses. The lots may be for any size, the building may be located anywhere on the lot, and there are no requirements of any kind. Residential uses are permitted in industrial zones.

Defendant's testimony indicated the land had no industrial use and because of the surrounding neighborhood, has no value for homes in half acre lots. To be economically feasible, only houses of the fifteen to twenty thousand class could be built on half acre sites, and because of the surrounding neighborhood, particularly the shacks to the south and southwest, these homes would have no market. No evidence was offered contrary to this testimony. The testimony is that the land has value for a development as planned.

There is little dispute as to the law. It is the application that is the problem. Both sides cite the same cases as standing for their contentions. The test is one of reasonableness under all the facts and circumstances. *Curtis* v. *Cleveland*, 170 Ohio St., 127; *Cleveland Trust* v. *Brooklyn*, 92 Ohio App., 361. If reasonable, it is a valid use of police power. If not, it is an unwarranted invasion of the rights of private property. *The Law of Zoning and Planning*, Rathkopf, Ch. 7, p. 115. The general tests are the character of the neighborhood; the lands particular suitability for a particular use; the conservation of property values; and the direction of building development. 101 C. J. S., Sec. 54, p. 767, et seq.; *The Law of Zoning and Planning*, Rathkopf, p. 218, et seq. In considering these factors, not only the political subdivision zoned must be considered, but also adjoining political subdivisions. *Tulsa Oil Co.* v. *Morey*, 60 A. (2d), 302; *Duffkin* v. *Creskill*, 64 A. (2d), 347. The most similar cases to this are the following: *Forde* v. *City of Miami Beach*, 1 So. (2d), 642; *City of Baltimore* v. *Cohn*, 105 A. (2d), 482; *Fenner* v. *City of Muskegon*, 50 N. W. (2d), 210; *Bogert* v. *Washington Tp.*, 135 A. (2d), 1; *Loesch Allotment* v. *Newbergh Heights*, 100 N. E. (2d), 543.

The character of the neighborhood is residential. The land has suitability only if used in keeping with the other existing uses. These uses will not depress property values but will

increase property values and the growth for larger homes is not toward this neighborhood. This land and land south of it and to the east has remained undeveloped for many years, except for a war time housing project. The land has never been used industrially, and with lack of highways and railroads will not so grow in the immediate future.

The aim of the ordinance was to prevent other slum sites such as the one described. However, where you have such a condition you may stop slums, but you will not secure the estate homes in close proximity thereto. One objection to the fifty-five foot lots was that of fire hazard. Another was that without public sewage certain area is necessary to remove leech-beds for the water supply. However, in this case, this development does not have this problem as it has complete water and sewage. It appears that the public welfare will be little benefitted because of the zoning of this tract. Either the land will remain vacant, or can only develop as planned, which will improve the whole neighborhood.

The court has no fault to find with the purpose of the zoning act, but considering the surrounding neighborhood, the uncontradicted testimony that the only use of this property is for modest homes; that the homes will improve the neighborhood; that they have water and sewer facilities; the fact there are not restrictions of any kind upon industrial development which may be built alongside, and in this area, which means the lowest kinds of uses, such as junk yards, the court can only come to one conclusion, that the zoning ordinance as applied to this tract is invalid, and is an unreasonable and arbitrary interference with the use of private property. It is true, this is in reverse of the usual case. Most seek a lower classification. However, the same principles apply.

In addition, there is one other fact before the Court. That is, whether or not the mandatory submittal of the Zoning Boards' plan was made to the planning commission. The Commission records are in such a state that nothing can be determined. The Chairman of the Zoning Board stated that he talked it over with the Planning Commission many times. However, the records show the resolution was passed on July 20th, and was submitted to the Trustees on July 24th. The required

submission would have to be made within these four days and would have to be acted on. The Clerk of the Commission testified positively that the approved plan was not submitted. The Chairman was silent as to these exact four days. What conclusion should be reached from these facts, however, becomes immaterial, the court deciding as it has.

Journal Entry may be prepared accordingly.