Argued February 24, reversed and remanded April 27, petition
for rehearing denied May 25, petition for review pending.
See later issue of Oregon Reports

# MULTNOMAH COUNTY, *Appellant, v.*
# HOWELL, *Respondent.*

496 P2d 235

*Paul G. Mackey,* Deputy District Attorney, Portland, argued the cause for appellant. With him on the brief was Desmond D. Connall, District Attorney, Portland.

*Paul M. Reeder,* Hillsboro, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

THORNTON, J.

Plaintiff Multnomah County brought suit to enjoin defendant from conducting rock-quarrying operations on his land which lies along the Sandy River gorge east of Troutdale. The land is zoned F-2, agricultural-residential, where rock quarrying is prohibited. After lengthy interlocutory proceedings extending over more than a year, the case was tried and the court entered a decree declaring that as applied to a portion of defendant's land the county's zoning ordinance amounted to "a taking or a confiscation without just compensation," and was therefore invalid. Plaintiff appeals.

In early 1958 defendant purchased the property involved which consisted of nine platted lots having a total area of approximately 13 acres, in a subdivision known as "Thompson Villa Tracts." Five of the lots, comprising approximately two-thirds of defendant's land, are suitable for agricultural-residential use in their present condition. However, four lots lie near the foot of a 200-foot cliff, and are partially buried under a talus slope which extends outward from the cliff and consists of loose basalt rock and boulders of a comparatively rare type called "boring lavas." It is as to these four lots that the trial court found that the zoning ordinance was an unconstitutional taking. Defendant's evidence was that the rock on the last-mentioned lots, because of its unique resistance to the

elements and its close proximity to nearby projects, was in demand from time to time for use in riprap and jetty stone.[1] At the time defendant acquired the nine lots they were unimproved and unzoned. Limited amounts of rock and gravel had been quarried and removed from the rocky portion of defendant's land in prior years by defendant's predecessors in title. However no question of a prior nonconforming use is involved on appeal.

In late 1958 after defendant purchased the land, plaintiff adopted a development plan which affected the entire general area and imposed the F-2, residential-agricultural, zone. Notwithstanding, during 1963 a contractor authorized by defendant engaged in limited rock removal. In 1965 defendant was denied a change of zone to M-1, heavy manufacturing. Plaintiff initiated this suit in 1968 after defendant entered into a contract and commenced to quarry and deliver 5,000 yards of rock to a nearby project. This drew complaints from occupants of neighboring homes and others that defendant's operation was resulting in noise, dirt and disruption to the community and destruction of natural scenic beauty.

At a preliminary hearing the trial judge denied a temporary restraining order but placed limitations on defendant's rock removal. Trial on the merits was held a year later. In November 1969 the matter was heard on defendant's application for a nonconforming use to permit quarrying of the rock. Plaintiff argued that the quarry use was not in keeping with the residential and scenic character of the area. Defendant contended that without removal of some 500,000 yards

---

[1] There was evidence that the "boring lava" formation extended for considerable distance on either side of defendant's property but apparently had never been quarried.

of rock the land could not be used for residences. The court on November 26, 1969, entered an interlocutory decree denying defendant's nonconforming use request, enjoining defendant from further rock removal, except enough to prepare the site for home building, and providing further that defendant could present to the court any proposal which had been denied by the planning commission and board of county commissioners as to land use. Both the planning commission and the board denied defendant's proposal contending that it would amount to a full-scale resumption of quarrying rather than preparing the lots for home sites. Defendant thereupon returned before the trial court seeking a review of his proposal. On May 14, 1971, the court made the following findings, *inter alia:*

> "6. The defendants [sic] have made a realistic attempt to qualify the property for residential use, but the proposal was refused by the Multnomah County Planning Commission and the Multnomah County Board of Commissioners.

> "7. Even if the talus slope was removed, requiring a prolonged full scale industrial operation with great noise, dirt and disruption to the community and destruction of natural beauty, the remaining property would still be unstable due to the sandstone formation under laying the talus slope.

> "8. The property is not fitted for and cannot be used for either agricultural or residential purposes."

The court then entered its decree holding that the zoning ordinance as applied to lots 7, 8, 9 and 10 of defendant's land was confiscatory and an unconstitutional taking. The court postponed the effective date of its decree 120 days in order to allow plaintiff the opportunity "to appropriate the said property through

condemnation proceedings * * * for public use and benefit."

The question presented for decision is this:

Was the county's zoning ordinance as applied to that portion of defendant's property buried under the loose basalt rock invalid as amounting to "a taking or a confiscation without just compensation"?

■ Upon an appeal from a decree in a suit in equity, the cause is tried anew upon the record. ORS 19.125. The trial court's findings as to the facts are persuasive and entitled to great weight. *Bither v. Baker Rock Crushing,* 249 Or 640, 650, 438 P2d 988, 440 P2d 368 (1968). Such findings, however, are not binding upon the appellate court and the rule itself is one of expediency only; the appellate court has the responsibility in every case to make its own independent study of the record and to arrive at its own conclusions regarding it. *Roberts v. Mariner,* 195 Or 311, 245 P2d 927 (1952).

■■ It will be presumed that a zoning ordinance is valid and that the appropriate public body in the enactment thereof acted reasonably. In examining the reasonableness of the legislative decision, this court will evaluate the evidence in the record. *Perkins v. Marion County,* 252 Or 313, 448 P2d 374 (1968). A mere difference of opinion as to what is reasonable under the circumstances will not suffice to establish that the commissioners acted unreasonably. *Dennis et ux v. City of Oswego et al,* 223 Or 60, 353 P2d 1044 (1960); *Shaffner et al. v. City of Salem et al.,* 201 Or 45, 268 P2d 599 (1954).

■ The reasonableness of a zoning ordinance must be tested by its effect on the whole of defendant's

contiguous property, not simply the effect on a portion thereof. Therefore the mere fact that an ordinance prevents an owner from using a portion of his property for a nonconforming purpose would not constitute a taking. Also, the authorities hold that a zoning ordinance is not confiscatory or unconstitutional merely because it operates to reduce the value of the property or restrict its use to less than its most profitable use. *Washington Co. v. Stearns,* 3 Or App 366, 474 P2d 460 (1970); *People v. Calvar Corporation,* 69 NYS2d 272 (1940), *aff'd* 286 NY 419, 36 NE2d 644, 136 ALR 1376 (1941). Nor would the fact that the subject lots may have greater value if otherwise zoned warrant a declaration that the zoning ordinance is confiscatory and unconstitutional. *Shepard v. Village of Skaneateles,* 300 NY 115, 89 NE2d 619 (1949).

■ We have reviewed the entire record and conclude that the trial judge erred in arriving at his findings of fact and conclusions of law previously set forth (a) by failing to consider Mr. Howell's property as an entire contiguous unit and (b) by failing to give effect to the residential use defendant could make of his entire property under the "Planned Development" provision of the zoning ordinance.

Mr. Baldwin, Director of the Multnomah County Planning Commission, testified at the final hearing before the court on April 7, 1971, as follows:

"There is another provision of the zoning ordinance that could be applied to this property, that either the four lots, by themselves, or in conjunction with other property which Mr. Howell owns in the vicinity and adjoining properties that could be, as I say, either individually or combined, developed under the planned development section of the Multnomah County Zoning Ordinance. This

is a section of the ordinance that allows, in this case, it would be residential development without reference to an individual house on each house necessarily. It allows some greater flexibility in the application of the standards of the zoning ordinance. It wouldn't require for instance, in this case, it would permit four single-family residences on this property, but, or four dwelling units on this property, but they need not be single-family residences. In other words, there could be two duplexes, or a four-plex, or a planned cluster housing arrangement of some sort, so that the property could be utilized, developed, only the westerly portion of the sites for residential purposes and leaving the balance in its natural state.

"The purpose of this section of the ordinance is to offer to a prospective developer, or property owner, greater flexibility in the use of his site than the rigid standards of the ordinance normally called for. * * * [T]he property owner may propose a way of developing his property outside of the regular standards of the ordinance and for the Planning Commission and the Board of County Commissioners to look at this proposal and make it a finding that it is appropriate to the area and to the needs for the development of the property.
"* * * * *

"Well, the P.D., or Planned Development Section of the Ordinance is a zone that goes on top of an existing zone. The present zone of this property is F-2. It could remain that way, F-2-P.D., or the base zone could be changed to R-4, R-20 or R-10. I think some of the adjoining property is R-10.
"* * * * *

"* * * I would think that the property could be developed for single-family residences on each lot by removing a small amount of rock and re-grading the site in order to create a building area for a single-family residence. I think this has been done in other areas along this talus slope situation.

Other houses have been built on the talus slope in the near vicinity without the massive removal of rock that was proposed in this application * * *."

Contrary to the view expressed by Mr. Baldwin, defendant offered the testimony of an expert who explained how defendant's property could be made into a residential amphitheater but that this would require the costly removal of 50,000 to 250,000 cubic yards of rock. He maintained that the property could not be used for residence purposes otherwise. Just how much rock removal, if any, would be necessary to prepare the site for home construction was thus a matter of dispute.

In the initial stages of the proceedings defendant testified at least twice that he purchased the property in order to market the stone and to have a nice quiet place to live.

Later he modified this by saying that he would like to develop the property for homesites for himself and a few of his friends. We note, however, that defendant offered no testimony that he had ever consulted with home builders with reference to using the four lots for homesites.

We reach the conclusion that the subject ordinance does not bar defendant from making any beneficial use of his property; and that there is available under the ordinance a procedure whereby defendant can, if he so desires, submit a new and different proposal which could enable him to make use of his lots for residential purposes. We cannot presume, as defendant contends, that the county authorities will arbitrarily refuse a proper application for planned development. The record indicates that both defendant and his counsel were unaware of this approach, and

may not have been advised thereof by plaintiff. In view of this we cannot hold as did the trial judge that the ordinance amounted to "a taking or a confiscation without just compensation." We therefore reverse.

In *Guaclides v. Englewood Cliffs,* 11 NJ Super 405, 78 A2d 435 (App Div 1951), the court considered a similar question. There a zoning amendment which was applicable to every area and which, with the exception of an area at one end, changed all multi-family dwelling districts into single-family districts in a residential borough in which no apartment house or other multi-family structure had ever been built.

The New Jersey court held that the subject zoning amendment was not an unauthorized taking of property in the constitutional sense as applied to plaintiffs' 17-acre tract upon which, owing to the topography, single-family houses could be built only at premium cost.

■ While the state cannot under the guise of exercising the police power take private property for public use without just compensation, Oregon Constitution, Art I, § 18, *Leet v. Montgomery County,* 264 Md 606, 287 A2d 491 (1972), the evidence here shows that the defendant can make substantial beneficial use of his property, including the four lots, by applying for a planned development zone, and perhaps by other methods of construction.

Cases cited and relied upon by defendant[20] are not applicable since here the zoning ordinance does not have the effect of prohibiting the landowner from

[20] Fenner v. City of Muskegon, 331 Mich 732, 50 NW2d 210 (1951); Morris County Land, etc. v. Parsippany-Troy Hills Tp., 40 NJ 539, 193 A2d 232 (1963); Arverne Bay Construction Co. v. Thatcher, 278 NY 222, 15 NE2d 587, 117 ALR 1110 (1938); Garbev Zoning Case, 385 Pa 328, 122 A2d 682 (1956).

making any future beneficial use of the property zoned. For a general discussion of the authority of a municipality predominantly residential in character to exclude from its borders industrial enterprises or activities, or to impose limitations thereon to preserve its residential character, see *Guaclides v. Englewood Cliffs,* supra.

■ Owners of adjacent property covered by a comprehensive zoning plan and ordinance have a right to rely on the protection afforded thereby. *Frankland v. City of Lake Oswego,* 8 Or App 224, 493 P2d 163 (1972).

Reversed and remanded.