Argued July 28, affirmed October 20, reconsideration denied
December 3, petition for review denied December 16, 1975

SCOTT, *Appellant, v.* STATE ᴇx ʀᴇʟ STATE
HIGHWAY COMMISSION (No. 73-233-L),
*Respondent.*

541 P2d 516

*Donald H. Coulter,* Grants Pass, argued the cause for appellant. With him on the briefs were Myrick, Coulter, Seagraves & Nealy, Grants Pass.

*Janet A. Metcalf,* Assistant Attorney General, Salem, argued the cause for respondent. With her on

the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Martin, Bischoff, Templeton & Biggs and David P. Templeton, Portland, filed a brief amicus curiae for Don S. Willner.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

Plaintiff brought an inverse condemnation action claiming that the state of Oregon had taken an interest in her land as a result of the adoption of the Scenic Waterways Act, ORS 390.805-390.925, and that she should be compensated therefor in the amount of $25,000. Oregon Constitution, Art I, § 18.[1] The trial court held there had been no taking and dismissed plaintiff's complaint. She appeals.

The Scenic Waterways Act was adopted by initiative at the general election held November 3, 1970, and went into effect December 3, 1970. The policy behind the Act is stated in ORS 390.815:

> "The people of Oregon find that many of the free-flowing rivers of Oregon and lands adjacent to such rivers possess outstanding scenic, fish, wildlife, geological, botanical, historic, archeologic, and outdoor recreation values of present and future benefit to the public. The people of

---

[1] Oregon Constitution, Art. I, § 18:

"Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered; provided, that the use of all roads, ways and waterways necessary to promote the transportation of the raw products of mine or farm or forest or water for beneficial use of drainage is necessary to the development and welfare of the state and declared a public use."

Oregon also find that the policy of permitting construction of dams and other impoundment facilities at appropriate sections of the rivers of Oregon needs to be complemented by a policy that would preserve other selected rivers or sections thereof in a free-flowing condition and would protect and preserve the natural setting and water quality of such rivers and fulfill other conservation purposes. It is therefore the policy of Oregon to preserve for the benefit of the public selected parts of the state's free-flowing rivers. For these purposes there is established an Oregon Scenic Waterways System to be composed of areas designated in accordance with ORS 390.805 to 390.925 and any subsequent Acts."

ORS 390.825 designates six rivers or portions of rivers as scenic waterways. The term "scenic waterway" includes "related adjacent land," which is defined as

"* * * all land within one-fourth of one mile of the bank on each side of a river or segment of river within a scenic waterway, except land that, in the department's judgment, does not affect the view from the waters within a scenic waterway." ORS 390.805(3).

ORS 390.845 authorizes the Department of Transportation (department), formerly the State Highway Commission, to regulate the use of related adjacent land. The procedure is as follows: an owner who wishes to use his land in a new way must submit a detailed written proposal to the department (ORS 390.-845(3)); if the department disapproves the proposed use because it impairs the natural beauty of the scenic waterway, it must negotiate with the owner if he so requests in an effort to agree on an acceptable plan (ORS 390.845(5)); after three months, either party may terminate negotiations (ORS 390.845(5)); after nine months following notice of termination of the

negotiations, the owner may proceed to develop his land as he therein proposed (ORS 390.845(5)); and by ORS 390.845(6) the department, with the concurrence of the State Water Resources Board, is also given authority to institute condemnation proceedings after the expiration of nine months following receipt of the landowner's written proposal.

Plaintiff owns "related adjacent land" along a designated section of the Rogue River. She purchased this land "as an investment for rural recreational building" in March 1969. In November 1972, pursuant to ORS 390.845(3), plaintiff applied to the department for permission to build a house on each of the two lots into which her approximately eight acres were divided, each house to be 30 feet in height and painted glossy white. After several discussions and much correspondence with plaintiff, an on-site visit and a survey by department staff members, the department by letter dated April 18, 1973, denied permission to construct the houses. In that letter, however, it did grant permission if several requirements were met, including the requirement that plaintiff start to build within one year of the letter and complete exterior construction within six months thereafter.

However, plaintiff did not build on the lots, but instead filed this action alleging that the state of Oregon had taken her land and demanding compensation. Specifically, plaintiff alleged that the state had acquired a scenic easement in her property and also that under the Act the department was restricting the manner in which plaintiff could use her land to such an extent that plaintiff was substantially deprived by the state of the useful possession of her property for the benefit of the general public.

The parties stipulated for a bifurcated trial, first disposing of the issue of whether her property had

been taken. The question of its value would be tried later if she prevailed. The trial court held that there was no taking and thus dismissed plaintiff's complaint.

ORS 390.805(4) defines "scenic easement" as

"* * * the right to control the use of related adjacent land, including air space above such land, for the purpose of protecting the scenic view from waters within a scenic waterway * * *."

Plaintiff claims the term "scenic easement" describes the right to regulate use of related adjacent land that the state acquires automatically under the Act. Defendant contends that an easement is not involved in the state's right to regulate use of related adjacent land, but that an easement is an additional right which the Act authorizes the state to acquire by purchase or gift. We agree with defendant.

■ It is elementary that a statute should be construed so as to hold it constitutional if possible. *State v. Pagel,* 16 Or App 412, 415, 518 P2d 1037, Sup Ct review denied, cert denied 419 US 867 (1974); *City of Portland v. Kreutz,* 7 Or App 618, 621-22, 492 P2d 824 (1972). We have already applied this rule to this very Act in *State Hwy. Comm. v. Chaparral Rec.,* 13 Or App 346, 352, 510 P2d 352 (1973), where we said:

"Given two constructions of the Act, one of which would hold it in part invalid, and the other valid, we apply the one that avoids declaring it invalid in any respect. [Citations omitted.]"

The rule in this state is that an easement is an interest in land. *State v. The Calif. Ore. Power Co.,* 225 Or 604, 609, 358 P2d 524 (1961); *Steelhammer v. Clackamas Co.,* 170 Or 505, 515, 135 P2d 292 (1943). The state may be required to pay for easements it has taken or extinguished. *Thornburg v. Port of Portland,* 233 Or 178, 185, 376 P2d 100 (1962); *State Highway Com. v. Burk,* 200 Or 211, 228, 265 P2d 783 (1954). If

the statute were construed to give the state a property interest in land without any right of compensation, the statute might well violate Oregon Constitution, Art I, § 18, set forth in n 1, supra. Since we conclude there is a reasonable way to construe the statute without this possibility of violating the constitution, that construction should be adopted.

There are only four references to "scenic easement" in the entire Act. The term appears mainly in clauses describing ways in which the state may or may not acquire such easements. The state does not, under the Act, automatically acquire an interest in the related adjacent land.

A third reason why we reject plaintiff's contention that the Act gives the state a "scenic easement" in all related adjacent land is that under that interpretation the provisions of the statute conflict with each other, and the court should construe the provisions of the Act so that they harmonize. *Springstead v. Lincoln Cas. Ins. Co.*, 232 Or 179, 183, 374 P2d 751 (1962). Under the Act, a landowner may use his land in a way that violates its standards if he makes a proposal and then waits a year. It would be a contradiction in the Act if it were to give the state an easement and also provide that the conditions of the easement could be broken.

■ We think it clear that the regulatory provisions of the Act are separate from the provisions giving the state the right to acquire land or interests in related adjacent land, and that the state did not acquire an easement in plaintiff's property merely by the adoption of the Act.

We now turn to plaintiff's next claim, that the state's power to regulate under the Act constitutes a taking for which compensation must be paid. Under

the Scenic Waterways Act, the most severe limitation that can be placed on a landowner who wants to use his land in a way that the department finds impairs the beauty of the scenic waterway is that he may have to wait a maximum of a year before proceeding. The restriction is but a temporary one. Since we are aware of no similar Act, we think zoning law here offers an appropriate analogy.

■■ Plaintiff contends that the regulatory provisions of the Act can only be exercised under the power of eminent domain. We disagree.

> "* * * The distinguishing characteristic between eminent domain and the police power is that the former involves the *taking* of property because of its need for the public use while the latter involves the *regulation* of such property to prevent the use thereof in a manner that is detrimental to the public interest. The police power may be loosely described as the power of the sovereign to prevent persons under its jurisdiction from conducting themselves or using their property to the detriment of the general welfare." (Footnotes omitted; emphasis in original.) 1 Nichols, Eminent Domain 1-104, 1-105, § 1.42 (3d ed rev 1975).

The Scenic Waterways Act is aimed at preventing the uses of land along free-flowing rivers in ways that destroy the character of those rivers. The land is not taken by the government, nor is the public allowed to use any privately owned land. The Act seeks only to prevent the destruction by the landowners of the scenic character of the rivers. That the public has no right to use these lands under the Act is emphasized by OAR 734-50-017, which prohibits the public from interfering with activities along the rivers and expressly states in subsection (1) that the public is not given any right to trespass on private lands along scenic waterways.

Before discussing the validity of these restrictions viewed in the light of zoning legislation, we note that ORS 390.845(2) requires the department to adopt rules and regulations governing the management of related adjacent land and sets forth some standards the department is to follow. The department has adopted regulations which appear in Oregon Administrative Rules, ch 734, §§ 50-005 to 50-040. These regulations notify owners of related adjacent land of requirements for applications, types of uses that do not require applications, and guidelines for making proposed uses in harmony with the scenic character of the area. Section 50-022 classifies sections of the scenic waterways/rivers according to remoteness and type of use at the time the Act went into effect, and provides guidelines for the types of uses that will be given permission in each of the classified areas.

■ The sections of the Act and regulations under it describing the application procedure contemplate that the department will act promptly in passing on an application. ORS 390.845 (4, 5); OAR 734-50-020(1), 50-025, 50-030. No contention is made here of any arbitrary or unnecessary delay in processing plaintiff's application.

■ It is well established that the power to limit use of land through zoning regulation is within the police power of the state. In *Jehovah's Witnesses v. Mullen,* 214 Or 281, 330 P2d 5, 74 ALR2d 347 (1958), *cert denied* 359 US 436, 79 S Ct 940, 3 L Ed 2d 932 (1959), the Supreme Court made this statement about appellate review of a zoning regulation:

"As an exercise of the police power, the courts will review such zoning ordinances to determine whether they are a proper employment of that power, i.e., whether they are reasonable or arbitrary and have a substantial relation to the public health, comfort, morals or welfare. [Citations omitted.]

The courts will not, however, interfere unless the action was clearly unreasonable and arbitrary and had no substantial relation to the legitimate objects sought to be gained, and will not review it if the question is fairly debatable. [Citations omitted.]" 214 Or at 307.

The objectives of the Act are given in ORS 390.815, set out above. Some of these aims are traditionally within the scope of the police power; others are aesthetic. In *Oregon City v. Hartke,* 240 Or 35, 49, 400 P2d 255 (1965), the Supreme Court in a zoning case said:

"We join in the view 'that aesthetic considerations alone may warrant an exercise of the police power.' "

■ The next challenge is whether the particular provisions of the Scenic Waterways Act are reasonable in light of the objectives. The Supreme Court in *Anthony v. Veatch,* 189 Or 462, 500, 220 P2d 493, 221 P2d 575 (1950), *appeal dismissed* 340 US 923, 71 S Ct 499, 95 L Ed 667 (1951), a case also involving a law adopted by initiative, said:

"* * * [W]hile the legislature is not the final judge of the limitations of that [police] power, and legislative action in that regard must be limited to such as is reasonably necessary for the public benefit, yet it is the legislative function primarily to determine the necessity or expediency of measures adopted; and that, when the courts are called upon to apply the judicial test of reasonableness, they will accord to the legislative authority, whether legislature or people, a legal discretion in determining, not only what the public interest requires, but also what measures are necessary for the protection of such interests, the presumption being in favor of the reasonableness and validity of the regulation. * * *"

We conclude that the challenged regulatory provisions of the Act are reasonable in light of its objectives.

In *Multnomah County v. Howell,* 9 Or App 374, 496 P2d 235 (1972), Sup Ct *review denied* (1973), this court considered a challenge to a restrictive zoning regulation and said:

> "We reach the conclusion that the subject ordinance does not bar defendant from making any beneficial use of his property; and that there is available under the ordinance a procedure whereby defendant can, if he so desires, submit a new and different proposal which could enable him to make use of his lots for residential purposes. * * *
>
> "* * * * *
>
> "Cases cited and relied upon by defendant are not applicable since here the zoning ordinance does not have the effect of prohibiting the landowner from making any future beneficial use of the property zoned * * *." (Footnote omitted.) 9 Or App at 382, 383-84.

Under the Scenic Waterways Act, plaintiff can continue to use her property as it was before the Act. She can seek permission to make new uses consistent with the Act and negotiate with the department to get such permission, or, after making a proposal that does not meet the standards of the Act and regulations, she may carry it out after waiting a maximum of one year. Under any of these possibilities, she will be able to make future beneficial use of the property. If the defendant elects to condemn, she will receive the constitutionally required compensation.

In *Oregon City v. Hartke,* supra, the Supreme Court upheld the constitutionality of a zoning regulation that completely excluded a common type of land use, automobile wrecking yards, from the city. In considering the issue the court said:

> "We hold that it is within the police power of

the city wholly to exclude a particular use if there is a rational basis for the exclusion. The city commission has the responsibility for the planning and development of the city in a manner which meets the needs of the community. The commission may interpret those needs as including the elimination of uses which are not in keeping with the character of the city as it then exists or as the community would desire it to be in the future. It is not irrational for those who must live in a community from day to day to plan their physical surroundings in such a way that unsightliness is minimized. The prevention of unsightliness by wholly precluding a particular use within the city may inhibit economic growth for the city or frustrate the desire of someone who wishes to make the proscribed use, but the inhabitants of the city have the right to forego the economic gain and the person whose business plans are frustrated is not entitled to have his interest weighed more heavily than the predominant interest of others in the community." (Footnote omitted.) 240 Or at 49-50.

This principle has equal application to the Scenic Waterways Act.

■ We hold that the regulatory powers given the state under the Scenic Waterways Act do not constitute a taking of the land regulated.

Finally, in addition to her contentions that she should be compensated, plaintiff contends that if the Scenic Waterways Act is valid as analogous to zoning legislation, then it is unconstitutional because it is "freezing" legislation designed to depress the price of land so that the government can purchase it at a low price. In Annotation, 36 ALR3d 751, 755 (1971), the annotator sets forth the general rules deducible from the authorities therein cited, as follows:

"The results reached by the courts in those cases involving the assertion that a 'freezing' stat-

ute or ordinance was invalid as violating constitutional requirements of due process of law have seemingly depended in large measure on whether, in the light of the particular circumstances disclosed by the evidence, the statute or ordinance could be said to be a reasonable enactment for the public safety, health, morals, or general welfare, or whether such statute amounted instead to an arbitrary, unreasonable, and discriminatory restraint upon the use of private property. On the other hand, the question most frequently presented in those cases wherein a 'freezing' statute or ordinance was attacked as violative of constitutional prohibitions against the taking of private property without just compensation has been whether the enactment in question was actually adopted in the interests of the public health, safety, morals, or general welfare, or whether, under the guise of the police power, it was adopted merely as a means of holding down or depressing land values in order to minimize the costs of acquisition of property in contemplated future condemnation proceedings.

"The line of demarcation between the valid exercise of the police power and constitutional guaranties is not well-defined, and thus, in determining whether or not particular 'freezing' statutes or ordinances were violative of constitutional prohibitions against deprivation of property without due process of law and the taking of private property for public use without just compensation, the courts have generally adopted an ad hoc approach and have grounded their decisions in large measure upon the particular and peculiar facts and circumstances of each case." (Footnote omitted.)

The purpose of this Act as stated in ORS 390.815 is clearly to preserve the scenic and natural character of the named free-flowing scenic rivers. Its time factors are not designed to freeze land values to subsidize later acquisition by or for the public, nor does it contemplate or impose an arbitrary, unreasonable

or discriminatory restraint upon the landowner. Indeed such restraints as it does impose are far less than those long established as valid under zoning laws. The emphasis in the Act is on the regulatory, zoning-type provisions and not on the condemnation of land, although power to condemn land is given. ORS 390.845(7).

■ We find that the waiting period has the purpose of encouraging negotiation between the landowner and the department in an attempt to find a use that does not impair the beauty of the river area and of giving the department reasonable time to decide whether to condemn land when agreement cannot be reached. We conclude that the one-year waiting period is not designed to freeze or depress land values before condemnation and is

"* * * a reasonable enactment for the public safety, health, morals, or general welfare * * *." 36 ALR3d, supra at 755.

Since plaintiff is now free, in the absence of any condemnation effort, to use her land for the purposes described in her proposal, we find it unnecessary to consider her contention that the Act does not provide any notice and hearing before the department as she urges are required in a quasi-judicial type of proceeding under the rule of *Fasano v. Washington Co. Comm.*, 264 Or 574, 507 P2d 23 (1973).

In the view we have taken of this case we find it unnecessary to consider the remaining contentions of the parties.

We affirm the trial court's dismissal of plaintiff's complaint.