Argued April 21, affirmed August 1, 1978

STATE ex rel DEPARTMENT OF
TRANSPORTATION, *Respondent,*
*v.*
HILDERBRAND et ux, *Appellants.*
(No. 3711, CA 8469)
582 P2d 13

John A. Jelderks, Judge (Opinion; Order on Preliminary Hearing).

Sam A. VanVactor, Judge Pro Tempore (Judgment).

Bruce W. Williams, Salem, argued the cause for appellants. With him on the briefs was Williams, Spooner & Graves, P.C., Salem.

W. Benny Won, Assistant Attorney Gneral, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

THORNTON, J.

**THORNTON, J.**

This is an appeal by defendant property owners from a judgment for the state in a condemnation proceeding.

Defendants' property, which is located along the Deschutes River in Sherman County, was condemned by plaintiff under the Scenic Waterways Act. Defendants contend that the trial court erred: (1) "in finding the taking of defendants' property was necessary," and (2) "in holding ORS 390.845(6)[1] [of the Act] constitutional in that the statute violates Oregon Constitution, Art I, § 18, as it allows private property to be taken for public use when the taking is not necessary."

The thrust of defendants' argument on appeal is as follows: that the taking was not necessary; that plaintiff failed to negotiate in good faith prior to filing suit; that plaintiff made no significant effort to devise a suitable plan for defendants' land; that plaintiff delayed unreasonably before condemning defendants' land; that defendants abandoned all challenged building proposals before suit; and finally, that the condemnation provisions of the Act are unconstitutional in

---

[1] ORS 390.845(6) provides:

"With the concurrence of the Water Policy Review Board, the department may institute condemnation proceedings and by condemnation acquire related adjacent land:

"(a) At any time subsequent to nine months after the receipt of notice of a proposal for the use of such land that the department determines would, if carried out, impair substantially the natural beauty of a scenic waterway unless the department and the owner of such land have entered into an agreement as contemplated by subsection (4) or (5) of this section or the owner shall have notified the department of the abandonment of such proposal; or

"(b) At any time related adjacent land is used in a manner violating ORS 390.805 to 390.925, the rules and regulations of the department or any agreement entered into by the department pursuant to subsection (4) or (5) of this section; or

"(c) At any time related adjacent land is used in a manner which, in the judgment of the department, impairs substantially the natural beauty of a scenic waterway, if the department has not been given at least one year's advance written notice of such use and if there is not in effect department approval of such use pursuant to subsection (4) or (5) of this section."

that they allow private property to be taken for public use without a showing of reasonable necessity for the taking.

The sequence of events leading up to the filing by plaintiff of this condemnation action may be summarized as follows:

Defendants are the owners of a tract which is "related adjacent land" under the Scenic Waterways Act, ORS 390.805 to 390.925. In August 1972 a dilapidated barn, which had been located on the property for many years, was destroyed by fire. The barn had been used by previous owners for storing fencing materials and caring for livestock, and for a place to stay during hunting and fishing trips.

On July 5, 1973, defendants' predecessor in interest in the property submitted a written proposal to the Department of Transportation (DOT) in which he expressed his desire to build a cabin or cottage to replace the barn. The proposal included a floor plan of the structure.

After receiving the proposal, DOT consulted various affected federal, state and local governmental agencies regarding the plan.

On September 28, 1973, the Programs Administrator of the State Parks Branch of DOT wrote a memorandum in which he recommended that the proposal be denied. The stated reasons for the recommendation were that the proposed structure was not necessary to an existing agricultural use of the land, and the primary use of the cabin would be recreational. The Programs Administrator also indicated that there was no agricultural justification shown for replacement of the barn by any structure. Defendants acquired title to the parcel in issue in September 1973.

On November 5, 1973, DOT received a sketch of a hexagonal cabin from defendants. The sketch included a bunk room, an area for hay storage for livestock, kitchen, toilet and stove.

On January 3, 1974, the State Parks Superintendent briefly described the proposal to DOT, recommending against approval, and placed it on the agenda of the January 30, 1974, meeting of the Transportation Commission. Defendant, John Hilderbrand, appeared at the January 30 meeting and defended his proposal.

On March 20, 1974, the State Parks Superintendent informed defendant Hilderbrand that the Transportation Commission had concluded that the proposal was contrary to the purpose of the Scenic Waterways Act and violated the administrative rules for the area and was, therefore, not approved.

On April 30, 1974, DOT received a letter from defendant in which he stated he would alter his proposal if DOT would allow him to keep a travel trailer at the location until the barn could be rebuilt. Hilderbrand later indicated that he might never rebuild the barn.

On May 14, 1974, the State Parks Superintendent informed Hilderbrand that a trailer or camper would not be acceptable.

On November 13, 1974, Hilderbrand appeared before the Sherman County Planning Commission to request a conditional use permit for the property. At the hearing Hilderbrand requested that the subject property be rezoned from agricultural to residential. He proposed building a cabin, corrals, campsites and possibly a boat ramp. The Programs Administrator for the State Parks wrote to the Planning Commission in opposition to the proposed use. Defendants subsequently withdrew their request for a conditional use permit.

On November 14, 1974, the Programs Administrator wrote a letter to defendants' attorney, in which he stated that unless defendant Hilderbrand "has some new and different idea, I don't expect further negotiations to be productive."

Defendants submitted at least three different proposals to DOT concerning the cabin.

On May 6, 1975, DOT wrote defendants that the state was about to file a suit and made defendants a cash offer for the purchase of the property.

On May 30, 1975, DOT adopted a resolution declaring the necessity of acquiring defendants' land for purposes of the Scenic Waterways Act.

On June 20, 1975, DOT filed a complaint in eminent domain against the defendants.

A separate hearing on the question of the necessity of the taking of defendants' property was held on May 20, 1976. At that hearing the Programs Administrator for the State Parks testified that DOT was still willing to negotiate a use for the property with defendants. Defendant Hilderbrand testified he would be willing if necessary to forego placing any structure on the property if he would be allowed to retain the property.

Following this hearing the trial court ruled the taking of defendants' land was necessary and ordered the question of compensation to be set for trial by jury. On March 11, 1977, after trial the jury awarded defendants $10,000 as reasonable compensation for their property.

The key provision of the Act involved here is ORS 390.845(6)(a). This statute authorizes the condemnation of "related adjacent land" where the owner has proposed using the land in a manner which would impair the natural beauty of this scenic waterway and he has not subsequently abandoned his plan notwithstanding the state's disapproval thereof.

■ Having examined the entire record, we conclude that there was substantial evidence from which the trier of fact could have found that the taking of defendants' property was necessary.

Defendants also argue that DOT acted in bad faith in condemning defendants' tract and that it delayed

unreasonably in condemning it. Neither of defendants' assignments of error specifically raises either of the above points. However, assuming arguendo that these arguments may be considered a part of defendants' first assignment, namely, that the taking of defendants' property was unnecessary, we find no evidence in the record tending to show either bad faith or unreasonable delay on the part of plaintiff. The record demonstrates that the impasse between defendants and DOT, and the accompanying delay, was attributable to defendants' insistence upon erecting a structure which DOT had determined to be improper.

Likewise we conclude that there was substantial evidence from which the trial court could have found that defendants' testimony at the hearing before the circuit court on May 20, 1976, did not constitute a timely and effective abandonment of their objectionable land use proposal. We construe the order of the circuit judge following the hearing setting the cause for trial by jury on the issue of just compensation to be a determination by the court that defendants had not effectually abandoned their plans to build. The answer makes it clear that even after the complaint was filed defendants had not abandoned their plans to construct their proposed improvements on the property.

We are satisfied that DOT's cause of action, including the challenged condemnation resolution of May 30, 1975, was in accordance with the Act. *See,* ORS 390.845(4) et seq; *Scott v. State Highway Commission,* 23 Or App 99, 102-03, 112, 541 P2d 516, *rev den* (1975).

■ Lastly, the trial court did not err in holding that the provisions of the Scenic Waterways Act allowing condemnation of defendants' lands under the facts presented here were constitutional.

As we have pointed out above, the necessity of the taking was established (a) by defendants' failure to submit a plan for a permissible use of the property, and (b) by defendants' failure to file with DOT an unequivocal abandonment of their plans to construct

an impermissible structure or structures on their property before DOT instituted condemnation proceedings as required by ORS 390.845(6)(a).

The purpose of the Act is to protect and preserve the natural setting and water quality of a particular designated scenic waterway. ORS 390.815. Under the Act an owner of "related adjacent land" who desires to use his land in a new way must give DOT written notice and a detailed description of the proposed use. ORS 390.845(3); OAR 734-50-020(1)(a) and 734-50-025(1). If DOT approves the proposed use, the owner "may immediately proceed with the proposed use as described to the department." ORS 390.845(4). If DOT disapproves the proposed use because it would substantially impair the natural beauty of the scenic waterway, the owner nevertheless may proceed with the proposed use one year after the original notice to the department. ORS 390.845(3) and (4); OAR 734-50-030(2)(c); *Scott v. State Highway Commission, supra.* The Department of Transportation, with the concurrence of the Water Policy Review Board, may institute condemnation proceedings. ORS 390.845(6)(a).

Where the owner has proposed using the land in a manner which would substantially impair the natural beauty of the scenic waterway and he has not subsequently abandoned his plan notwithstanding DOT's disapproval thereof, it may reasonably be presumed that the owner intends to proceed with the proposed use, particularly since he has the statutory right to do so one year after the original notice to the department. Thus, in light of the purpose of the Scenic Waterways Act, and giving due deference to the legislature's determination that public ownership of the related adjacent land is warranted under such circumstances, rather than having to maintain constant surveillance of it, the condemnation provisions of ORS 390.845(6)(a) meet the test of reasonable necessity and, therefore, are constitutional. *See generally, Chapman v. Public Utility Dist. No. 1 of Douglas Co., Wash.,* 367 F2d 163 (9th Cir 1966); *Jensen v. I. & M.*

*Elec.,* 257 Ind 599, 277 NE2d 589 (1972); *Mont. Power Co. v. Bokma,* 153 Mont 390, 457 P2d 769 (1969); *Moore Mill & Lbr. Co. v. Foster,* 216 Or 204, 336 P2d 39, 337 P2d 810 (1959). *See also, Port of Umatilla v. Richmond et al,* 212 Or 596, 321 P2d 338 (1958); *Smith et al. v. Cameron et al.,* 106 Or 1, 210 P 716, 27 ALR 510 (1922); *Scott v. State Highway Commission, supra.*

Affirmed.